new contract. Pollock states the rule as follows: That "neither the promise to do a thing nor the actual doing of it will be a good consideration if it is a thing which the party is bound to do by the general law, or by a subsisting contract with the other party." Pol. Cont. 161; Crosby v. Wood, 6 N. Y. 369. Nor is the performance of that which the party was under a previous valid legal obligation to do a sufficient consideration for a new contract. Vanderbilt v. Schreyer, 91 N. Y. 401; 2 Pars. Cont. 437. Seybolt v. Railroad Co., 95 N. Y. 562, was a case where a mail agent was killed by an accident on defendant's road. Upon the pass issued for his use by defendant was an indorsement by which it stipulated for an exemption from liability from damages on account of injuries occurring through its negligence. Under the contract between the United States government and the defendant in reference to the carrying of mail it was provided that any railroad company carrying the mail shall carry on any train which may run over its road, and without extra charge therefor, all mailable matter directed to be carried thereon, with the person in charge of the same. The court held in this case (Ruger, C. J., writing), that, as the defendant was under a legal obligation to carry the deceased, the promise to carry him if he would make a new contract limiting its liability was without consideration, and at page 575 says:

"We are of the opinion that the agent's acceptance of the pass under the circumstances of this case did not indicate an intention to assent to the provisions therein contained, and, even if it might be so construed, that the want of a consideration for such an agreement rendered it nudum pactum."

The legislature had said to this defendant, "You must issue a mileage book for $20, and you must accept it for transportation." For the purpose of evading this direct and mandatory statute, the defendant attempted to make a new contract, giving as a consideration a reduced fare, but as a matter of fact no reduction of fare was made. There was no consideration to support the alleged contract. The plaintiff was entitled to ride upon defendant's road, and defendant was bound to accept the mileage book for transportation, or in violation thereof forfeit $50. The legislature evidently intended that the mileage books should be used for transportation. Other railroads were accepting them on the trains without tickets, and the act declares, "and shall accept the same for transportation." By chapter 835 of the Laws of 1896 the act in question was amended so as to require a mileage exchange ticket to accompany the book, showing the plain intent and meaning of the legislature.

Motion for a new trial denied. Motion denied.

---

(18 App. Div. 180.)

## WELLS v. STEINWAY RY. CO.

(Supreme Court, Appellate Division, Second Department. June 8, 1897.)

1. CARRIERS—INJURING PASSENGER AFTER LEAVING CAR.
    A street-railroad company is liable for injuries to a passenger after she left the car, where the injuries were caused by the negligent placing in the street of rails taken from the track in making repairs, which rails it was necessary to cross in reaching the sidewalk.

2. CONTRIBUTORY NEGLIGENCE—AVOIDANCE OF DANGER.

Plaintiff, after leaving defendant's street car, had to cross some rails which defendant had placed along the street while repairing the track. She stepped on one of the rails, and it tilted and threw her down. In an action for the injuries so caused, defendant requested a charge that "plaintiff saw the rails, and after looking at them decided that they were safe for her to step upon, and for her error of judgment defendant is not liable." *Held*, that the effect of such request was to charge plaintiff with more than reasonable care in avoiding injury.

Hatch, J., dissenting.

Appeal from Kings county court.

Action by Adelaide L. Wells against the Steinway Railway Company for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Eugene L. Bushe, for appellant.

Adolphus D. Pape, for respondent.

GOODRICH, P. J. The defendant is a common carrier of passengers, its route running along Borden avenue and ending at the ferry at the foot of that street in Long Island City. On November 30, 1895, the defendant was taking up its old rails from Borden avenue and replacing them with new ones. The old rails were placed in the gutter or on the sidewalk, and there is conflicting testimony as to the manner in which the rails were laid, whether on their bottoms or edges, and whether some were laid on top of others, and whether they were laid in a continuous line, or whether occasional openings were left between the ends for passage of persons to and from the sidewalk. About half past 10 o'clock in the morning the plaintiff was a passenger upon one of the cars, which stopped about 150 feet from its usual place near the ferry house because the track had been taken up for the purpose of repairs. The conductor notified the passengers to alight, and the plaintiff got out and went to the southerly side of the street in order to reach the ferry. She passed around the rear end of the car, and finding, as she testified, no passage between the ends of the rails, stepped upon one of them, which tilted, and threw her to the ground. There is other evidence ·confirming her testimony. On the other hand, there is testimony on the part of the defendant contradicting the statement that the rails were laid in a continuous line, without openings between the ends of them. The foreman of the defendant's laborers, and other witnesses, testified that there were no rails to the north of the track, and only two rails in the gutter on the south, and that these had been left there only a couple of hours, and were properly and securely laid.

The whole evidence raised questions of fact as to the method of placing and piling the rails, and the number and location of them, the continuity of the rails, and whether there were occasional openings between the ends of them. These questions were fairly submitted to the jury, and their verdict imports a finding on these facts

in favor of the plaintiff. Undoubtedly the defendant, while repairing its road in the manner indicated, was justified in requiring its passengers to alight at the place of the accident; but it was bound to see that the displaced rails were placed in such a manner as not to endanger the safety of its former passengers. This question was fairly submitted to the jury. Nor does it matter that the street to the north of the track was free and unencumbered. The plaintiff had the right to go to the south side of the street, which was on her route to the ferry. Whether or not she was negligent in attempting to cross the rails was a question for the jury, and that fact has been found in her favor.

We are thus brought to the questions of law involved. The defendant moved to dismiss the complaint on the ground that the plaintiff had ceased to be a passenger of the defendant. This was denied, but the court charged that when the plaintiff alighted from the car the duty of the defendant, so far as the relation of carrying was concerned, had ended, but that the plaintiff was entitled to reach her destination at the ferry under such conditions and surroundings and circumstances as would not place her in undue peril. It remains to notice one refusal to charge:

"I ask you to charge that the plaintiff saw the rails, and, after looking at them, decided that they were safe for her to step upon; and for her error of judgment defendant is not liable."

This request assumed that the plaintiff saw, or could see, that the rails were so firmly laid that there was no danger in stepping upon them. She was only obliged to exercise reasonable judgment and care in this respect, and she is not chargeable with absolute knowledge whether or not it was perfectly safe for her to attempt to cross. The court did charge that if, by the "exercise of reasonable care plaintiff could have seen the danger, and ought to have apprehended the danger, of the situation, she was chargeable with negligence, for she was not at liberty to take even doubtful chances of the consequences of crossing these rails."

We see no reason for which the judgment should be reversed. All concur, except HATCH, J., dissenting.