## FLACK v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department.   June 13, 1899.)

1. STREET RAILROADS—INJURY TO PASSENGERS—DEFECTS IN ROADBED—NOTICE.
    A passenger was injured in alighting from a street car by the giving
    way of the roadbed, which was elevated, the street having been cut
    down to a lower level. The proof did not show by whose agency the
    street was lowered, but similar accidents had happened to passengers
    alighting from defendant's cars in that vicinity. *Held* that, even if de-
    fendant was not responsible for the lowering of the street, it was bound,
    knowing the defective condition of its roadbed, to inform passengers
    about to alight thereon that they could not safely do so.

2. SAME—EXERCISE OF DUE CARE.
    While a street-railway company may not be obliged to furnish a pas-
    senger a safe place to alight from its cars, where they are stopped not
    at a regular stopping place at his instance, yet, if it has provided any
    portion of its roadbed as a place for passengers to alight, it must exer-
    cise reasonable care to keep that particular place safe for the purpose.

Appeal from trial term, Kings county.

Action by Sarah A. Flack against the Nassau Electric Railroad
Company.   From a judgment for plaintiff, and an order denying its
motion for a new trial, defendant appeals.   Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

Henry Yonge, for appellant.
Thomas E. Pearsall, for respondent.

WILLARD· BARTLETT, J.   The evidence offered in behalf of the
plaintiff upon the trial of this action authorized the jury to infer the
existence of a condition of things at the time of the accident which
befell her which would have sustained the verdict in her favor.   She ·
was a passenger on one of the defendant's cars running through
New Utrecht avenue.   Desiring to alight, she motioned to the con-
ductor to stop, and the car stopped near Fifty-Seventh street.   As she
stepped from the car to the ground, the soil gave way under her feet,
and she fell to the surface of the street, sustaining a fracture of the
hip.   It appears that at the time of the accident the tracks and road-
bed of the defendant's railway between Fifty-Sixth street and Fifty-
Eighth street, on New Utrecht avenue, were from 18 to 20 inches
higher than the general surface of the avenue in that vicinity, the
street having been cut down to the lower level several months before.
The roadbed and railway thus constituted an embankment from 18
to 20 inches high along the middle of the avenue.   The top of this
embankment at the point where the plaintiff left the car extended
six or seven inches beyond the step, but the embankment slanted out-
ward, so that at the bottom it extended perhaps 2½ feet beyond the
car step.   The gravamen of the complaint was that the defendant
negligently maintained its roadbed, at the place where the accident
occurred, in a dangerous, defective, improper, and unsafe condition,
and invited and permitted the plaintiff to alight thereon, thereby
causing her to suffer the fracture of the hip already mentioned and
other severe injuries; and the case was submitted to the jury on the

theory that the plaintiff could not recover, unless the place which gave way under her feet was a part of the defendant's roadbed. The jury were also expressly instructed that the term "roadbed" did not include any of the ground outside the end of the sleepers. The defendant introduced no testimony, and the proof in behalf of the plaintiff did not show by whose agency the general surface of New Utrecht avenue was lowered, so as to create, for the time being, the embankment along which the defendant's railroad was then operated. There was evidence that other similar accidents had previously happened to passengers alighting from the cars of this railroad company, under similar circumstances, while the street was in the same condition; and this proof rendered the defendant chargeable with notice that its roadbed in that neighborhood was likely to give way under persons leaving its cars, and imposed upon it the duty of exercising greater caution than might otherwise have been necessary to afford passengers an opportunity to alight in safety, even if the defendant was in no wise responsible for lowering the adjacent surface of the avenue. A knowledge that such change created a condition of danger which might not be obvious to outgoing passengers called for the exercise of some degree of care, either by warning or otherwise, to prevent accidents such as that which befell the plaintiff. If the defendant was unable to maintain its own roadbed in a condition safe for passengers to step upon, by reason of the action of the city authorities in lowering the grade of the street, it was, at all events, bound to inform its passengers who were about to alight upon that roadbed that they could not do so with safety.

The only doubt in my mind in regard to sustaining this judgment is suggested by an exception to the charge. The learned trial judge, after instructing the jury that the defendant, as a common carrier of passengers, was bound to exercise reasonable care and diligence, not only in the management of its cars, but also in the structure and care of its track and appurtenances necessary to the safety of the passengers, went on to say:

"This includes the obligation to furnish the passenger a reasonable, safe, and fit means and place of alighting from its cars when the cars are stopped for the purpose of permitting the passengers to get off."

Counsel for the defendant expressly excepted to the instruction that it was the duty of the defendant to provide a reasonably safe place for the plaintiff to alight on. As a general proposition, I do not understand it to be the law that a street-railway company, whose car is brought to a standstill at the instance of a passenger, not at any terminal point or at a stopping place regularly designated as such by the management of the road, is bound, in the discharge of its duties as a common carrier, to furnish to the passenger a safe place at which to alight. The passenger, under such circumstances, chooses the place for himself; and unless there is evidence that its dangerous character was known to the persons operating the car, and that they allowed him to alight without giving him any caution, the railroad company is ordinarily not responsible for the unsafe condition of any part of the street, except that which constitutes a part of its roadbed, or which it is legally obligated to keep in repair. Bigelow v. Rail-

way Co., 161 Mass. 393, 37 N. E. 367. In Wells v. Railway Co., 18 App. Div. 180, 45 N. Y. Supp. 864, the basis of the defendant's liability was not its failure to provide a safe place for the plaintiff to alight on, but was its negligence in obstructing her passage through the street on the way to the neighboring ferry, after she had ceased to be a passenger. There is a case in Georgia which asserts the obligation of a street-railway company to provide a safe place of egress for passengers more strongly than any other decision which I have been able to find. There the court say:

"Companies engaged in carrying passengers on cars along a public street are not understood as engaging to make safe landing places, but to select them." Railway Co. v. Glover, 92 Ga. 132, 18 S. E. 406.

An examination of the facts of that case, however, shows that the court was there speaking of the duty of a street-railway company to select places at points of destination where passengers can leave their cars in safety, and that the remark quoted can hardly have referred to the stoppage of a street car at the instance of the passenger at any point which he may choose along the route.

I am inclined to think, therefore, that the instruction of the court to which this exception relates would have to be regarded as too broad, if we took the same view of it as does the learned counsel for the appellant, and considered it as though it stood alone, separate and apart from the rest of the charge. It must be remembered, however, that the court had distinctly impressed upon the minds of the jury the proposition that they could not find a verdict in favor of the plaintiff, unless the accident occurred in consequence of the dangerous condition of that portion of defendant's roadbed upon which the plaintiff stepped. As to this part of the street, it was a place which the defendant was bound to exercise reasonable care to keep safe for the use of passengers invited or permitted to alight upon it, so that, when all portions of the charge which relate to this subject are construed together, we find that the jury were merely instructed that, if the defendant provided any part of its roadbed as a place for passengers to alight on, it was bound to exercise reasonable care to keep that particular place safe for the purpose. In this instruction there was certainly no error. Although the accident occurred in daylight, the conditions of danger were not so obvious as to charge the plaintiff with contributory negligence, as a matter of law, and that question was properly left to the jury.

In both aspects of the case, I think the judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.