# Sligo, Appellant, *v.* Philadelphia Rapid Transit Company.

*Negligence—Street railways—Passenger alighting from car—Condition of roadway.*

1. Where a passenger in alighting from a street railway car steps into a depression caused by a gutter at the side of a country road and is injured there can be no recovery against the street railway company.

2. When municipal consent is obtained to lay the tracks of a street railway on a public road, it becomes the duty of the railway company to conform its lines to the established grade of the highway and to adjust its operation to the conditions existing on the ground. It is under no obligation to cover a ditch constructed by the public authorities alongside of the public road upon which the tracks are laid nor to establish a platform or landing place over such a ditch.

3. In an action against a street railway company by a woman to recover damages for personal injuries sustained while alighting from a summer car, it appeared that the accident occurred on a May evening in the twilight when there was still light enough to read a newspaper. The car was an open one with a running board on either side. On one side of the track was a broad, smooth, level, macadam surface and on the other side there was a little depression in the nature of a roadside ditch used for drainage purposes. It was made by grading the roadway under municipal regulation from the traveled part of the highway to the outer side of the same and was of the general character of ditches or gutters alongside of country roads. Passengers on the street railway could alight on either side of the car and in alighting could step down on the level macadam road on one side or on the receding gutter side on the other. The plaintiff stepped off on the gutter side, and in doing so the step being a little high, she lost her balance, fell and was injured. *Held,* that the court committed no error in directing a verdict for the defendant company. Mahoney v. Phila. Rapid Transit Co., 214 Pa. 180, followed.

Mr. Justice Mestrezat dissents.

Argued Jan. 19, 1909. Appeal, No. 274, Jan. T., 1908, by plaintiffs, from judgment of C. P. No. 3, Phila. Co., June T., 1905, No. 3,858, on verdict for defendant in case of George D. Sligo and Florence Sligo, his wife, v. Philadelphia Rapid Transit Company. Before Mitchell, C. J., Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before FERGUSON, J.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant. Plaintiffs appealed.

*Error assigned* was in giving binding instructions for defendant.

*Thos. J. Duff,* with him *H. B. Painter,* for appellants.— There is no difference in the duty owing by carriers of passengers by horse railroad and by steam. Passenger carriers bind themselves to carry safely those whom they take into their coaches as far as human care and foresight will go; that is, to the care and diligence of a very cautious person: Wynn v. Central Park, etc., R. R. Co., 38 N. Y. St. Repr. 181 (14 N. Y. Supp. 172); Poulin v. Broadway, etc., R. R. Co., 61 N. Y. 621.

It is the duty of a street railway company to stop its cars at suitable places for passengers to leave them and remain stationary long enough to enable them to do so safely: Jagger v. People's St. Ry. Co., 180 Pa. 436; Crissey v. Hestonville, etc., Pass. Ry. Co., 75 Pa. 83; Philadelphia City Pass. Ry. Co. v. Hassard, 75 Pa. 367; Del., Lackawanna & Western R. R. Co. v. Napheys, 90 Pa. 135; Meier v. Railroad Co., 64 Pa. 225.

The question of contributory negligence, and negligence where there is conflicting testimony, is always a matter for the jury: Crissey v. Hestonville, etc., Pass. Ry. Co., 75 Pa. 83; Wilson v. Railroad Co., 177 Pa. 503; Baker v. Irish, 172 Pa. 528.

It is further submitted that while there may be a difference between street and steam railway arising from the lack of control which a street railway has over the street which would differentiate it in regard to an absolutely safe landing for its passengers, yet it is required to select its point of discharging passengers with the highest degree of care; and further, that with a knowledge of the defects of the road on which it agrees to carry the passengers it must take every precaution to select proper stopping places and must be held to have contracted to carry the passenger with a full knowledge of the govern-

ment of the road and the defects and dangers thereof, and is therefore responsible: Peters v. Rylands, 20 Pa. 497; Rauch v. Lloyd & Hill, 31 Pa. 358; Richmond City Ry. Co. v. Scott, 86 Va. 902; s. c. 11 S. E. Repr. 404; Farish v. Reigle, 11 Gratt. 697; N. Y., P. & N. R. R. Co. v. Cooper, 85 Va. 939 (9 S. E. Repr. 321); Cartwright v. Ry. Co., 52 Mich. 606 (18 N. W. Repr. 380); Terre Haute, etc., Ry. Co. v. Buck, 96 Ind. 346; McGee v. Ry. Co., 92 Mo. 208 (4 S. W. Repr. 739); Maverich v. R. R. Co., 36 N. Y. 378; Citizens' Street Ry. Co. v. Twiname, 111 Ind. 587 (13 N. E. Repr. 55); Smith v. St. Paul City Ry. Co., 32 Minn. 1 (18 N. W. Repr. 827); Topeka City Ry. Co. v. Higgs, 38 Kan. 375 (16 Pac. Repr. 667); City, etc., Ry. Co. v. Findley, 76 Ga. 311; Barrett v. Third Ave. R. R. Co., 45 N. Y. 628; Hill v. Ninth Ave. Ry. Co., 109 N. Y. 239 (16 N. E. Repr. 61).

*Thomas Leaming,* with him *Chester N. Farr, Jr.,* for appellee.—If it was so dark immediately after sunset that the planks were totally invisible then the plaintiff cannot charge the defendant with negligence in failing to perceive that the car was not precisely opposite them and yet escape the consequences of contributory negligence: Patton v. Traction Co., 132 Pa. 76.

The decision which, upon facts exactly parallel in the minutest particular, rules this case, is Mahoney v. Philadelphia Rapid Transit Co., 214 Pa. 180.

That defendant is not responsible for the peculiarities of the road upon which a passenger alights from a street car, was decided by this court in Keater v. Scranton Traction Co., 191 Pa. 102; Scanlon v. Phila. Rapid Transit Co., 208 Pa. 195; Bland v. Ry. Co., 13 Pa. Superior Ct. 93.

OPINION BY MR. JUSTICE ELKIN, March 16, 1909:

The learned trial judge submitted this case to the jury which after long deliberation reported a disagreement, whereupon a verdict for defendant was directed and judgment entered thereon. It is clear as indicated by the course of the trial that the learned court in the first instance entertained some doubt as to the liability of the defendant, but after more mature deliberation concluded that there could be no recovery

under the facts and the rules of law applicable thereto. The accident occurred on the Old York road upon which is laid a street railway line with the consent of the municipality. This road is of the general character of a country highway with the usual ditches, banks, crossings, drains and culverts necessary or convenient to the maintenance of such a highway. At the point where Eckard avenue intersects with York road a somewhat temporary sort of bridge made of planks had been constructed over the gutter, thus affording a passageway for vehicles and travelers using the highways. The street railway had nothing to do with the construction or maintenance of the highways or the so-called bridge in question. It happened that the avenue was wider than the bridge was long, but the public authorities were responsible for this situation and it was not either the right or the duty of the street railway company to exercise any control over the highways, nor did the burden rest upon it to furnish a different kind of bridge, or platform or landing place at that point. When municipal consent was obtained to lay the tracks of the street railway upon the public road, it became the duty of the railway company to conform its line to the established grade of the highway and to adjust its operation to the conditions existing on the ground. This eliminates from the case all questions as to the construction of said approaches or places to alight. No such duty rested upon the appellee company at the point of accident. As to the questions whether the car was stopped at a proper place, and whether notice should have been given the passenger before alighting we agree that the case at bar is ruled by Mahoney v. Rapid Transit Company, 214 Pa. 180. The cases are almost parallel in their facts and to distinguish them in principle would require a refinement too technical to have any force in the practical application of the law. The injured passenger was riding in an open summer car with a running board on either side. On one side of the track was a broad, smooth, level, macadam surface and on the other side there was a little depression in the nature of a roadside ditch used for drainage purposes. It was made by grading the roadway under municipal regulation from the traveled part of the highway to

the outer side of the same and was of the general character of ditches or gutters alongside of country roads. Passengers on the street railway could alight on either side of the car and in alighting could step down on the level macadam road on one side or on the receding gutter side on the other. In the present case the complaining passenger stepped off on the gutter side and in so doing the step being a little high, she lost her balance and fell, thus receiving the injuries for which damages are sought to be recovered in this action. The accident occurred on a May evening, in the twilight. The weight of evidence shows that it occurred from 7 to 7:15 o'clock in the evening, although the injured lady said it was later. The car had not yet been lighted and one of the witnesses testified it was light enough to read a newspaper. Under these circumstances, we think, this case is squarely ruled by the Mahoney case above cited.

Judgment affirmed.

MR. JUSTICE MESTREZAT, dissenting:

I cannot agree with the disposition made of this case by the majority of the court, and as it affects every individual in the state who has occasion to use a street railway, I will submit the reasons for my conclusion. The case is disposed of by an opinion which cites a single authority to sustain its conclusion but which in my judgment, as I shall hereafter point out, is not an authority for the principle which controls the case at bar. I believe the rule announced by the majority is so much at variance with the well-settled doctrine on the subject that it will invite legislation which, in seeking to correct the effects of the decision, may impose too great responsibility upon street railway companies.

The material facts of the case which were sufficient to send it to a jury are not in dispute, or if in dispute were sufficiently supported by evidence to require the case to be submitted to the jury. The female plaintiff was a passenger on one of defendant's cars going north on the east side of Old York road, and desired to alight at Eckert avenue. She signaled the conductor, who stopped the car just short of the usual place of stopping at

Eckert avenue. The plaintiff, sitting in the third seat from the rear of the car, arose after it had stopped. and proceeded to alight by way of the running board at the east side of the car. This was the proper and safe side for passengers to leave the car. She passed the conductor, and as she was stepping from the car fell into a ditch and was injured. The accident occurred between 7:30 and 8 o'clock on May 8, 1905. It was dark or dusk. She thought she was alighting at the usual place, and testified that before making the step from the car she looked to the ground and "they all looked the same, the ground looked the same;" that "I supposed I was stepping on the ground and I went in the ditch, which was beyond these boards at the south side of Eckert avenue." At the northeast corner of the intersection of Eckert avenue with York road there is a grocery store in front of which the ditch on the east side of Old York road is covered, making an entirely safe place for passengers to enter and alight from cars going north on the trolley line and is used for that purpose. The ditch immediately south of this covering is also covered with planks for a short distance. The car stopped south of these planks for the plaintiff to leave it, and she stepped into the unprotected ditch. She stepped a distance of three feet instead of one foot, which was the distance to the ground. The conductor testified that he knew the condition of the place at which the plaintiff alighted and that he did not warn her of the danger because, "I had spoken to so many people before that and they would turn round and give me the laugh and go on."

The plaintiff, as she testified, did not know of the ditch where the accident occurred. The conductor should have stopped the car in front of the store which was the usual and safe place for passengers to alight. The place at which she did alight was dangerous and so known to the conductor, and hence to the defendant company.

The majority opinion holds that the public authorities were responsible for the condition of the street at the place the passenger was directed to alight; that no duty rested upon the company to put the place in proper and safe condition; and that whether the car was stopped at a proper place or whether

notice should have been given to the passenger before alighting is determined adversely to the plaintiff by Mahoney v. Rapid Transit Company, 214 Pa. 180. These are the reasons assigned by this court for sustaining the action of the trial court in directing a verdict for the defendant company.

It is uniformly held that a street railway company is a common carrier and that its duties and responsibilities and the degree of care required of it in the carriage of passengers are substantially the same as those of a railroad company. We have time and again held that it is the duty of a carrier of passengers not only to transport the passenger to his destination in safety, but to furnish a safe place for him to alight. In the case of a person alighting from a street car it is said the relation of carrier and passenger does not cease until he gets a footing upon the street which he can maintain: Nellis on Street Surface Railroads, 449; but the better and more generally accepted doctrine is that the relation continues until the passenger has reasonable opportunity to leave the car and roadway of the company after the car reaches its stopping place: Melton v. Birmingham Ry., Light & Power Co. (Ala.), 16 L. R. A. (N. S.) 467. Of course, a street railway company cannot be held to as strict accountability in furnishing a place for a passenger to alight as a railroad company. The former must discharge its passengers in the public highway and at places over which it does not have exclusive control; and hence its liability is different from that of a railroad company which has the exclusive control over its stational facilities. It is well settled, however, that a street railway company must exercise care in the selection of the place at which it discharges passengers. This is the doctrine of all the authorities: 1 Fetter on Carriers of Passengers, sec. 64; Middlesex R. R. Co. v. Wakefield, 103 Mass. 261; Creamer v. Ry. Co., 156 Mass. 320; Mobile Light & R. Co. v. Walsh, 146 Ala. 290; Foley v. Brunswick Traction Co., 66 N. J. L. 637; Flack v. Nassau Electric R. R. Co., 58 N. Y. Supp. 839; Henry v. Grant Street Electric Ry. Co., 24 Wash. 246; Sweet v. Louisville Ry. Co., 113 Ky. 15. In Mobile Light & R. Co. v. Walsh, 146 Ala. 290, the passenger signaled the conductor to stop the car, but it was run beyond

the crossing to a place where there was a depression in the street. The passenger in alighting from the car stepped into the depression and injured herself. The court held the case was for the jury. In Bass v. Concord Street Ry. Co., 70 N. H. 170, the passenger requested the conductor to stop, which he did, but it was at a place a few feet beyond the usual stopping place. In leaving the car the passenger stepped into a depression in the highway and was injured. The court held there was sufficient evidence of the company's negligence to go to the jury. In Topp v. United Rys. & Electric Co., 99 Md. 630, the car was run beyond the point where the passenger signified his desire to alight. In an action by the passenger for injuries received while alighting, it was held that by stopping at the place there was an implied invitation to the passenger to alight, as well as an implied representation that it was a proper place for that purpose imposing upon the street railway company the duty of exercising the utmost degree of care in selecting a safe place. In our own case of Jagger v. People's Street Ry. Co., 180 Pa. 436, following Crissey v. Hestonville, Mantua & Fairmount Pass. Ry. Co., 75 Pa. 83, it was said by this court (p. 438): "It is the duty of a street railway company to stop its cars at suitable places for passengers to leave them, and remain stationary long enough to enable them to do so safely." The same rule applies in the case of an interurban railway company: Indiana Union Traction Co. v. Jacobs, 167 Ind. 85; Joslyn v. Street Ry. Co., 184 Mass. 65; Tilden v. Rhode Island Co., 27 R. I. 482; McGoven v. Interurban Ry. Co. (Ia.), 13 L. R. A. (N. S.) 476.

It is, therefore, manifest that the rule announced in the majority opinion is in conflict with the well-settled doctrine throughout the country. It is not a question of who constructed the bridge or platform over the ditch at the place the plaintiff alighted, as contended by the majority, but whether the defendant company stopped its car at a suitable place for the plaintiff to alight. The fact that the municipal authorities had permitted the place of the accident to become unsafe for passengers to alight from the defendant's cars will not excuse the company for stopping its car at that point, known by its

conductor to be dangerous, for the purpose of discharging passengers from its cars: Leveret v. Shreveport Belt Ry. Co., 110 La. 399; Stewart v. St. Paul City Ry. Co., 78 Minn. 85. The doctrine announced by the majority of the court as applicable to the admitted facts of this case is a violation of the settled rule of law in every jurisdiction and is supported by no authority, English or American, so far as I know. It is in conflict with the universal doctrine that imposes upon a carrier the highest degree of care in the protection of its passengers until they are discharged from the car at a proper and suitable place. It permits the carrier company to discharge with impunity its passengers at any hour of the night at the most dangerous place. It sustains a conductor of a street railway company, as in this case, who, by stopping his car, impliedly invites a passenger to alight at a place unknown to the passenger but known to the conductor to be dangerous. Such a doctrine, I submit, is not supported by reason or by any precedent in either the common or civil law.

The majority opinion cites the Mahoney case to sustain it on "the questions whether the car was stopped at a proper place, or whether notice should have been given to the passenger before alighting." This, I think, is a misapprehension of the decision. That case, like the present, was trespass for injuries sustained by stepping into a ditch when alighting on the right-hand side of a street car operated on Old York road. As here, it was contended that the right-hand side was the "unsafe side" on which to alight, but this court said: "Under ordinary circumstances it is obviously the safe and prudent thing for a passenger to leave the car upon the right-hand side." Again: recognizing what the plaintiffs allege here was the duty of the conductor under the circumstances when he saw Mrs. Sligo about to step from the car, the opinion in the Mahoney case says (p. 184): "If there was any duty upon the defendant company under the circumstances, it would have been that of giving warning at the precise moment of leaving the car." This is the opinion of the court as to the duty of a conductor under circumstances such as existed in the present case, the failure in the performance of which would be clear negligence.

The learned trial judge submitted the case at bar to the jury in a charge, a part of which was too favorable to the defendant, but another part of which is clearly within well-established doctrine. Among other things he said: "Having stopped the car at the place it did stop, you may consider whether or not the employee of the company was negligent, if the car was in a position where a passenger, in stepping off, might step into the ditch and be injured, if the conductor did not warn the passenger against the possible danger. When the car stops any place there is a tacit invitation to alight. The company does not insure the passenger against a possible accident in getting off a car, but where a car is on the edge of a ditch, I will leave it to you to say if it was not negligence for the conductor to permit the passenger to step off the car at a point opposite a ditch without a warning against a possible danger." This question properly arose under the evidence submitted and the jury should have been required to answer it. The law as there stated is correct and was applicable to the facts disclosed by the evidence in the case. The subsequent action of the trial judge, when the jury failed to agree, in directing a verdict for the defendant was clearly reversible error.

I would reverse the judgment and direct the case to be retried.