## Leedom *v.* Philadelphia & Reading Railway Company, Appellant (No. 1).

*Negligence—Railroads—Station—Passenger—Alighting from train—Unsafe landing place.*

1. It is the duty of a railroad company not only to exercise the strictest vigilance in receiving and conveying a passenger, but also to set him safely at a station at the end of the journey; and where the car makes its stop beyond the usual or a safe landing place, announcement should be made of that fact before the passengers attempt to leave the train, and any neglect to do so will be a violation of duty for which the carrier is responsible.

2. Where a railroad company maintains at a station a platform, a portion of which for passengers, is slightly below the level of the lowest car step, and another portion for freight, is about four feet above the passenger platform, and the company stops a train on a dark and misty night, in such a way that an exit from a passenger car is brought in front of the freight platform, and a passenger expecting to land on the passenger platform steps off into the space between the car and the freight platform and is injured, the company will be liable for the injuries sustained.

Argued Oct. 18, 1912. Appeals, Nos. 135 and 136, Oct. T., 1912, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1910, No. 466, on verdict

for plaintiff in case of Lillian Leedom, by her father and next friend, I. Newton Leedom, and I. Newton Leedom v. Philadelphia & Reading Railway Company.    Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ.    Affirmed.

Trespass to recover damages for personal injuries. Before Carr, J.

The opinion of the Superior Court states the case.

Verdict and judgment for plaintiff, Lillian Leedom, for $500 and for I. Newton Leedom for $110.    Defendant appealed.

*Error assigned* was in refusing judgment for defendant non obstante veredicto.

*Wm. Clarke Mason,* for appellant.—It was error to submit the case to the jury: Bland v. Ry. Co., 13 Pa. Superior Ct. 93; Seddon v. Bickley, 153 Pa. 271; Deery v. R. R. Co., 163 Pa. 403; Rothschild v. R. R. Co., 163 Pa. 49; Del., Lack. & West. R. R. Co. v. Napheys, 90 Pa. 141; Graham v. Pennsylvania Co., 139 Pa. 149; Kurfess v. Harris, 195 Pa. 385; Lerner v. Philadelphia, 221 Pa. 294; Hopkins v. R. R. Co., 225 Pa. 193; Robb v. Connellsville Boro., 137 Pa. 42; Mahoney v. Transit Co., 214 Pa. 180; Gulf, C. & S. F. Ry. Co. v. Hodges, 24 S. W. Repr. 563; Kingsley v. R. R. Co., 80 Atl. Repr. 327.

*Victor Frey,* with him *Augustus Trask Ashton,* for appellees.—The case was for the jury: Philadelphia, Wilmington & Baltimore R. R. v. McCormick, 124 Pa. 427; Englehaupt v. R. R., 209 Pa. 182; Weller v. Ry., L. R. 9 C. P. 126; Praeger v. Ry. Co., 24 L. T. R. (N. S.) 105; Beamer v. P. & R. Ry. Co., 50 Pa. Superior Ct. 211.

Opinion by Orlady, J., February 27, 1913:

On the trial below the defendant requested the court to say to the jury that under all the evidence in the case the

verdict must be for the defendant, which was declined, and after a verdict for the plaintiff on this appeal by the defendant the refusal of the court to so charge is made the first assignment of error, the second being the overruling of defendant's motion for judgment non obstante veredicto.

There are few facts in controversy in this case, and a careful examination of the record satisfies us that the case was presented to the jury under adequate instructions.

The plaintiff was a regular passenger on a train, consisting of three cars—her destination being a regular station, where the train arrived about seven o'clock, P. M. It had been snowing during the day and turned to rain during the early part of the evening, so as to make the car platform slushy and insecure.

The railroad company had provided a passenger platform at this station constructed of macadam, about 400 feet long, the track edge of which was about four inches from the side of a passenger coach and from six to eight inches below the last step of a car. At the eastern end of this platform an incline about twenty-five feet long connected it with a freight platform, the top of which was about four feet above the level of the passenger platform, and was used for receiving and discharging baggage from the door of the baggage car. The passenger platform was lighted by one small electric light within a storm shelter shed on the passenger platform, and one outside the shed located about twenty feet distant from the scene of the accident.

The plaintiff was familiar with the platform, its approaches, and the place at which this train usually stopped to discharge passengers, as she had frequently ridden on it. When the train arrived at the station it was "raining, misty, slushy and dark." The stop was announced by a uniformed brakeman, who called out the name of the station, from the front of the middle car in which the plaintiff was riding. She described the accident as follows: "I buttoned up my coat, picked up my suit case in my right

hand and walked to the front end of the car. I walked down the steps and took the usual step just as I used to do on any other night, and when I stepped off the step I went down into space, instead of on the platform, on what I thought I was stepping, and when I landed I struck the ties, rolled under the platform and my suit case fell on top of me. I was laid flat on the ground and one of the train men called to me to get up, but I could not get up until the suit case was taken from me. When I got up they lifted me on the freight platform. I supposed it would be slippery and slushy from the snow and rain, and was looking at the steps to go down when I fell. I heard Mr. Wernwag caution his wife, 'be careful, dear, when you come out.' I thought he was cautioning his wife because the steps were slippery. I was looking down at my steps to see when I got to the bottom, and when I got to the bottom step, I was looking down to what I supposed was the regular platform. It was so dark I could not see. All the lights in the car were burning and there was a light about twenty feet away, but it was a stormy night and dark. After I got up I saw the steps of the car were alongside of the station platform incline, about the top of the incline."

It is undisputed that the train ran past its usual stopping point for discharging passengers, and the place where this plaintiff was discharged was in front of the raised freight platform, which was not intended by the company for the receipt of passengers from its coaches. Under the announcement of the brakeman, and her familiarity with the station platform she had a right to suppose that the train had stopped at the usual or an equally safe place.

It is the duty of the carrier not only to exercise the strictest vigilance in receiving and conveying passengers, but also to set him safely at a station at the end of the journey, and where the car makes its stop beyond the usual or a safe landing place, anouncement should be made of that fact before the passengers attempt to leave the train, and any neglect to do so will be a violation of duty for

which the carrier is responsible: Englehaupt v. R. R., 209 Pa. 182; Beamer v. Ry. Co., 50 Pa. Superior Ct. 211.

The facts in this case are radically different from those in Bland v. Ry. Co., 13 Pa. Superior Ct. 93, on which appellant relies, and the rule to be applied in street railway cases is quite different from that controlling in a steam road platform case, for the reasons stated in Sligo v. Transit Co., 224 Pa. 135, 141, "A street railway company cannot be held to a strict accountability in furnishing the place for a passenger to alight as a railroad company. The former does not have exclusive control over the places where it discharges its passengers."

Had the train stopped at the usual place for discharging passengers the liability of the defendant would be very different, but having passed that safe place to one of manifest danger, its clear duty was to either return the train to the regular platform, or to caution the passengers of the increased risk in getting off.

The question of the plaintiff's contributory negligence was fully and clearly left to the jury. No evidence was offered by the defendant and no exception taken to the charge of the court.

The judgment is affirmed.