Thompson *v.* Philadelphia, Appellant, et al.

Argued October 7, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Aaron W. White,* with him *John J. K. Caskie,* Assistant City Solicitors, and *Joseph Sharfsin,* City Solicitor, for appellant.

*Frank J. Eustace, Jr.,* with him *Francis M. McAdams* and *William W. McAdams,* for appellee.

*Joseph J. Tunney,* with him *Bernard J. O'Connell,* for additional defendant.

OPINION BY BALDRIGE, J., November 19, 1937:

This action in trespass was brought originally against the city of Philadelphia, which thereupon issued a writ of scire facias bringing into the proceeding the Philadelphia Rapid Transit Company as additional defendant. The jury rendered a verdict of $500 against both defendants. The court later sustained a motion of the transit company for judgment n. o. v., and dismissed a similar motion in behalf of the city. These appeals of the city followed.

On May 26, 1936, about 9:50 a. m., plaintiff, a passenger on an eastbound trolley car, alighted at the intersection of Dauphin street, Seventh street, and Germantown avenue, where many people change cars. The car stopped even with the west end of the building on the southwest corner of Seventh and Dauphin streets, which, according to plaintiff's testimony, was apparently the usual place to discharge passengers. This is due to a diagonal crossing, as Germantown avenue runs northwest across the other two streets, and the northwest corner of Dauphin street and that avenue is "a good car length" to the west. If the car had proceeded farther, it would have extended into this oblique crossing.

We think the evidence was sufficient to establish that the car stopped at approximately the usual place.

The plaintiff, a paperhanger, was carrying a bag containing his tools and overalls, weighing about ten

pounds, in one hand and a roll of paper in the other. When he was departing from the car, three or four passengers were ahead of him, a couple more were following, and five or six were crowded around the front doors waiting to board the car. As the plaintiff put his right foot down on the cartway, he fell and was injured. It appears that he stepped into a hole about one and a half feet long, one foot wide, and one and a half to two inches deep, located in the asphalt cartway at the edge of the Belgian runners laid next to the rails. The overhang of the car step when down was twenty-three inches. This defect, caused by a lack of surface repair, had been in existence for more than a month.

A municipality is not an insurer of the absolute safety of pedestrians using its streets and it is not responsible for every misstep or injury; nor does every depression or irregularity impose a liability: *Lerner v. City of Phila.*, 221 Pa. 294, 70 A. 755; *Williams v. Kozlowski et ux.*, 313 Pa. 219, 169 A. 148; *Burns v. City of Pittsburgh et al.*, 320 Pa. 92, 181 A. 487. The law requires only an exercise of reasonable care. Whether the municipality is guilty of negligence varies with the circumstances, depending upon the nature and extent of the alleged defect, its location, etc. This court, speaking through Judge PARKER, pointed out in *Kuntz et al. v. Pittsburgh et al.*, 123 Pa. Superior Ct. 394, 401, 187 A. 287, that an irregularity may be so slight that the court is required to hold, as a matter of law, that the evidence is insufficient to create a liability, "but there is a shadow zone where such question must be submitted to a jury whose duty it is to take into account all the circumstances." Generally, in cases of this character, the question of the alleged negligence is for the jury. See, also, *McCarthy et ux. v. City of Pittsburgh et al.*, 127 Pa. Superior Ct. 399, 193 A. 358.

In our judgment, the evidence was sufficient for the

jury to say whether the appellant was guilty of negligence.

The city insists that the evidence established that the plaintiff was guilty of contributory negligence, for, if he had tarried a moment, he would have been able to see the defect and avoid the accident.

We agree with the learned court below that this contention seeks to hold the plaintiff to a higher standard of care than is ordinarily exercised by a person in alighting from a car under similar circumstances. He was in the middle of a group of passengers who were leaving the car and others were waiting to get on it. Where such conditions exist, it is not the usual custom for one to wait until he has an unobstructed vision of the street, thus detaining passengers behind him, nor can it be said that it was his legal duty before alighting to insist that those standing ahead, eagerly waiting to get on the car, move so that he might observe where he was stepping. In *Mulford et ux. v. Phila. R. T. Co. et al.*, 310 Pa. 521, 165 A. 837, cited by the appellant, the factual situation was quite different. There, a passenger alighted from the car with no one behind her, and, after walking a couple of steps on the street, fell into a hole, plainly visible.

The last position taken by the appellant is that if plaintiff is entitled to recover, the transit company is jointly liable.

The primary duty of the transit company was to operate its cars in a safe manner. A motorman is required to pay attention to the mechanical operation of the car, to the pedestrian on the street, to vehicular traffic, to signals of passengers, lights, and various other matters, which is necessary to give efficient public service. He should stop his car so that passengers may alight only at places that are not manifestly dangerous. In *Perret et ux. v. George et al.*, 286 Pa. 221, 133 A. 228, the plaintiff, about noon, was getting off a street car and stepped into a hole in the street

which she was prevented from seeing by people in front of her. The car had passed a short distance beyond the usual stopping place at the intersecting street because of a building operation at the corner. The court held, there, that if there was any responsibility for the accident it was upon the municipality and not the street car company. *Gerlach et ux. v. City of Phila. et al.*, 103 Pa. Superior Ct. 401, 157 A. 212, the principal case relied upon by the appellant, may readily be distinguished from the one in hand, as, there, the plaintiff was discharged from a street car at a place which was obviously dangerous. The hole in the present case was not in that category. As we have seen, it was in the public highway, over which the transit company had no control and no duty to repair.

In our view, the proof failed to establish that the transit company was responsible for the accident.

A careful review of this record convinces us that there is no merit in the various assignments of error.

Judgments affirmed.