Carroll *v.* Pittsburgh, Appellant.

Argued October 2, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Con F. McGregor,* for Pittsburgh Railways Company, appellant.

*Thomas E. Barton,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for City of Pittsburgh, appellant.

*James T. Philpott,* with him *Harry A. Estep,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, November 15, 1951:

The jury in this trespass action having found a verdict for defendants, we are of opinion that the court below was not justified in granting, as it did, plaintiffs' motion for a new trial on the ground that the verdict was contrary to the evidence and that in the interest of justice a new trial should be had.

On the night of April 9, 1946 the wife-plaintiff, Marie P. Carroll, was a passenger on a trolley car on Federal Street operated by defendant Pittsburgh Railways Company. Federal Street is a main, much travelled, well lighted highway in the City of Pittsburgh. At Montgomery Avenue there was a regular carstop 10 feet back of the intersection and another one 45 feet to the rear, so that the cars customarily stopped within that 55 feet distance, as did the car in the present instance on which Mrs. Carroll was a passenger. She testified that she alighted from one of the front doors and in so doing her right foot became caught in a hole in the asphalt of the cartway,—a hole which she described as being larger than a dinner plate, irregular in shape, and of a depth of about three inches; she said she had so much difficulty in extricating her foot that she required the assistance for that purpose of the street car operator and her daughter who was a passenger with her on the car and alighted immediately behind her. She was not certain, in her testimony, whether her foot went directly into the hole as she stepped from the car or whether she had first taken another step. She claimed that she suffered injuries as the result of the accident and she and her husband brought suit against both the Pittsburgh Railways

Company and the City of Pittsburgh to recover damages. She was corroborated in her testimony by her daughter. On the other hand, the motorman testified that several persons stepped from the car immediately before Mrs. Carroll and some after her; when she had taken about two steps from the car, she went down on her right knee; he left the car to help her but she had meantime gotten to her feet; he asked her if she was hurt and she told him she had turned her ankle, was not injured and did not wish to go to the hospital; she walked to the sidewalk with her daughter and went down Federal Street. He further testified that at the place where she fell there was nothing but a small frost crack in the asphalt paving about an inch wide and a half inch deep and running diagonally toward the curb for a distance of about four or five feet. A registered nurse employed by the Allegheny General Hospital who was sitting in the car directly behind the motorman and facing the point where Mrs. Carroll was alighting testified that she saw her fall after taking one or two steps, but she rose directly, said she was all right and walked away. Plaintiffs produced witnesses who testified that for some time previous to the accident there had been several holes in the street at that point, including one of them as described by Mrs. Carroll.

We consider first the liability of the Pittsburgh Railways Company. It appears that there were Belgian blocks bordering the outside of the rails of the Federal Street tracks; from there to the sidewalks the street was paved with asphalt. In their complaint plaintiffs alleged that the Railways Company was negligent in failing to maintain the street at the point of the accident in a reasonably safe condition and in permitting the hole to be and remain within its right of way. But, concededly, the Railways Company was obliged to keep only the portion of the highway in repair that was

within the rails and for a distance outside them of 18 inches. Mrs. Carroll did not testify, nor did the evidence otherwise show, that the hole into which she stepped—which was in the asphalt paving and not in the Belgian blocks—was within that 18 inch distance; even had she stepped directly down from the car step into the hole it would not apparently have brought the point of the accident within the area of the Railway Company's responsibility taking into consideration the overhang of the car over the rails; moreover, as already stated, Mrs. Carroll admitted that she may have taken a forward step after alighting. Having failed affirmatively to prove, as it was her burden to do, that the hole existed in the portion of the highway for the repair of which the Railways Company was responsible, she failed to make out a cause of action against the Railways Company on that count, as the learned trial judge properly indicated in his charge to the jury.

Plaintiffs' other charge of negligence on the part of the Railways Company was based on their allegation that the motorman stopped the car and allowed Mrs. Carroll to alight at a point where he knew or should have known of the existence of the hole. It is true that there are authorities to the effect that where a passenger is mistakenly led to alight at an extremely dangerous place which is not the usual stopping place the carrier may be held liable for any injuries which the passenger thereby sustains.[1] But in the present instance the car stopped at a regular stopping place at the intersection of two city streets, one of which was a principal high-

---

[1] *O'Malley v. Laurel Line Bus Co.*, 311 Pa. 251, 166 A. 868; *Brown v. Beaver Valley Motor Coach Co.*, 365 Pa. 578, 76 A. 2d 403; *McCollum v. Pittsburgh Railways Co. (No. 1)*, 51 Pa. Superior Ct. 637; *Gourlay v. Philadelphia Rapid Transit Co.*, 100 Pa. Superior Ct. 419; *Gerlach v. City of Philadelphia*, 103 Pa. Superior Ct. 401, 157 A. 212.

way where presumably large numbers of passengers were continually boarding and alighting from the cars and where there were no unusual barricades, trenches, mounds of earth or extraordinarily hazardous conditions such as featured the cases referred to. It has been said that "a street railway company cannot be held to as strict accountability in furnishing a place for a passenger to alight as a railroad company. The former must discharge its passengers in the public highway and at places over which it does not have exclusive control; and hence its liability is different from that of a railroad company which has the exclusive control over its stational facilities."[2] In *Perret v. George,* 286 Pa. 221, 223, 224, 133 A. 228, 229, it was said by Mr. Justice (later Chief Justice) KEPHART in a passage frequently quoted in later cases: "The hole into which appellant stepped was in the public highway, a thoroughfare over which defendant had no control, was not in any way responsible for, and had no authority to repair, if needed. However broadly and strictly we may have held street railways to care in receiving and discharging passengers, where the company owns or controls the right-of-way with the approaches thereto, the rule is different where such right-of-way and approaches are not so owned. In the latter case, there is a permissive use of the street in common with others, without any control of it. The public officers were in authority, and the municipality is responsible for the street's condition if an injury results therefrom: . . . It is only in exceptional cases arising under contract that a street railway company is responsible for accidents occurring in the cartway of a street through lack of repair. Street car companies are not required to observe the condition of streets over which its cars travel so as to stop their

[2] From the dissenting opinion of Justice MESTREZAT in *Sligo v. Philadelphia Rapid Transit Co.,* 224 Pa. 135, 141, 73 A. 211, 213.

cars with exactness at places where passengers may avoid ordinary defects in the highway while alighting. To require otherwise would be to exact of such carriers a degree of care not consistent with efficient public service and would impose an obligation impossible of performance, considering the condition of some of the highways of today. . . . To hold, under such circumstances, that the duty of stopping at a safe place to alight embraced the obligation to avoid any defect in the highway, between the car and the curb, would cause the company to be liable as an insurer for the safety of a pedestrian in coming from or going to a car. If there was responsibility for the accident, it was the municipality's not appellee's." It was accordingly held in that case that the plaintiff, who was injured when alighting from a street car by stepping into a hole in the street which she was prevented from seeing because of people in front of her, was not entitled to recover from the street railway company.

In *Scherer v. Philadelphia Rapid Transit Co.,* 295 Pa. 199, 145 A. 76, a passenger was held not entitled to recover from the trolley company where she was led to alight at a point where there was an excavation in the course of repair of the track and the earth beneath the paving gave way as she stepped upon it.

In *Martin v. Steen,* 109 Pa. Superior Ct. 263, 167 A. 609, plaintiff fell into a hole or ditch in the street as she was about to board a car at the rear door as directed by the motorman. It was held that she could not recover because the street railway company was not responsible for the existence of the ditch and was not required to observe the condition of streets over which its cars travelled so as to stop them with exactness at places where passengers might avoid ordinary defects in the highway while boarding or alighting.

In *Thompson v. Philadelphia,* 129 Pa. Superior Ct. 174, 195 A. 174, plaintiff, alighting from a trolley car,

stepped into a hole in the street about one and a half feet long, one foot wide, and one and a half to two inches deep. Recovery was denied on the ground that whatever negligence existed was that of the municipality, not that of the street railways company, since the hole was in the public highway over which the company had no control and no duty to repair.

In *Murtha v. Philadelphia,* 130 Pa. Superior Ct. 411, 197 A. 513, it was once more held that where a passenger, alighting from a trolley car, stepped into a hole about fifteen by twenty-four inches and about six inches deep, the car having stopped short of the usual stopping place because there was another car ahead of it discharging passengers, she could not recover from the trolley company. It was pointed out that it is only where the company stops its car at a place manifestly dangerous, as on the side of a street immediately adjacent to an embankment or excavation, that it can be held liable for injuries to a passenger in alighting, and that the liability of the company does not extend to a situation where a hole in the paving is an ordinary defect in the highway.

In *MacDonald v. Philadelphia Rural Transit Co.,* 147 Pa. Superior Ct. 220, 24 A.2d 37, plaintiff, alighting from a bus, stepped into a hole or depression about three feet long, one foot wide, and about three or four inches deep. It was held that the hole was not such as to make the bus company liable, since it was in a highway over which the company had no control and was no more than a defect arising from lack of surface repair, nor did the company have any duty or authority to repair it. The court said (pp. 224, 225, A. p. 39) : "The duty of stopping at a safe place to permit passengers to alight does not embrace the obligation to avoid every defect in a public highway. . . . It is a matter of common knowledge that trolleys and buses traverse

public highways which have many minor defects and worn out places. These conditions may remain for some time until repairs are made by the public authorities solely responsible for maintenance. There is no duty on the operators of such common carriages to anticipate every uneven surface or defect in the highway proper or along the side thereof, and stop so as to avoid any remote possibility of an alighting passenger's sustaining injury by slipping on an uneven surface or stepping in a depression not in itself an obviously dangerous place."

It will be noted that in several of the cases thus cited the hole or depression which caused the accident was considerably larger than that which allegedly existed in the present case. The principle underlying all of them is that it would be unjust and impracticable to hold street railway companies liable to passengers alighting from their cars on busy city streets, where, especially in the case of asphalt pavings, there are frequently holes, depressions and worn out places of various dimensions which may remain for considerable periods of time until repairs are made by the public officials who alone are responsible for the maintenance of the highway in good order and repair. Witnesses produced in the present case by plaintiffs testified to the presence of many holes in the asphalt paving at Federal Street and Montgomery Avenue, and holes no doubt existed at many other intersections, so that if plaintiff's theory of the obligation of the Railways Company were correct it would have been practically impossible for it to stop its cars at the various streets along the route which it traversed.

In view of the law as thus laid down in the authorities cited it was clearly the duty of the trial judge to direct a verdict for the Pittsburgh Railways Company, and therefore it was an abuse of discretion, a verdict

having been rendered by the jury in its favor, to grant, as to it, a new trial. Where the facts and the law of a case show no liability on the part of the defendant, and the court should therefore have directed a verdict in its favor, an order of the court granting a new trial, after the jury has found a verdict for the defendant, will be reversed on appeal, the verdict for the defendant reinstated, and judgment entered thereon: *Fornelli v. Pennsylvania R. R. Co.,* 309 Pa. 365, 164 A. 54; *Walters v. Federal Life Insurance Co.,* 320 Pa. 588, 184 A. 25; *Brogan v. Philadelphia,* 346 Pa. 208, 29 A.2d 671; *Fritz, Administratrix, v. York Motor Express Co.,* 358 Pa. 398, 58 A.2d 12.

We come then to the question of the granting of a new trial as to the defendant City of Pittsburgh. As previously stated it was only Mrs. Carroll herself and her daughter who testified that she fell into a hole of considerable size and of a depth sufficient to prevent her extricating herself without considerable difficulty. On the other hand, the testimony of the motorman and of a disinterested passenger was to the effect that at the point where Mrs. Carroll fell there was merely a slight crack in the asphalt paving of almost negligible width and depth. As the trial judge therefore properly told the jury: "the whole point in the case is the credibility of the witnesses", and "the credibility of the witnesses is for you". In granting a new trial the court did not express any opinion of its own as to the relative credibility of the witnesses or any belief that the jury had misjudged them or any of them. A new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion: *Wilson v. Kallenbach,* 332 Pa. 253, 255, 256, 2 A.2d 727, 728. Neither should it ordinarily be granted on the ground that the verdict was against the weight of the evidence where the evi-

dence is conflicting and the jury might have found for either party: *Reithof v. Pittsburgh Railways Company,* 361 Pa. 489, 492, 65 A.2d 346, 347. In the present instance each side produced the same number of witnesses who saw the accident, and, as far as the element of disinterestedness is concerned, the advantage lay clearly with defendants; moreover, considering the fact that other passengers were said to have alighted from the car both before and after Mrs. Carroll, her story tends somewhat toward the improbable. Above all, however, the jury were no doubt led to their conclusion by the quite obvious contributory negligence of Mrs. Carroll. In the cross-examination following her original testimony she frankly stated that the night "was clear. You could see good." . . . The street lights "were on. You could see. I could see very well where I was stepping. . . . I could see. . . . My eyes were good. . . ." Her daughter testified that Federal Street was a well lighted street; that it was a clear night, that the street lights were burning, that "There was light on the street," that there was no difficulty seeing what was on the street. Mrs. Carroll also said that "The light was from the street car. You had a good light there when you were getting off. The whole car was all lit up." It was only after repeated efforts by her counsel to elicit from her and her daughter facts or circumstances that might have excused her for failure to see the hole that they stated that the paving of the roadway was blacktop, the color of the hole was black, and for that reason the hole could not be seen. While this testimony prevented the court, perhaps, from declaring Mrs. Carroll guilty of contributory negligence as a matter of law, the jury were no doubt impressed by the unlikelihood of her being unable to see the hole had she looked to the ground, as she said she did, when she was stepping off the car or walking therefrom toward the curb.

In short, all the factors in the case would seem strongly to justify the jury's verdict in favor of the City of Pittsburgh, and it would therefore seem clear that there was a palpable abuse of discretion in the court's granting a new trial on the ground that the verdict was contrary to the evidence (meaning presumably the weight of the evidence[3]) and that in the interest of justice a new trial should be had. With all due regard to the principles governing appellate review in such cases, as set forth in *Bellettiere v. Philadelphia*, 367 Pa. 638, 81 A.2d 857,—where it was pointed out that an award of a new trial is an inherent and discretionary power of the trial court and that its order granting a new trial will not be interfered with unless a palpable abuse of power appears,—nevertheless, as stated by the late Chief Justice MAXEY in *Jones v. Williams*, 358 Pa. 559, 564, 565, 58 A.2d 57, 60: "While this Court usually supports the action of the trial court in granting or refusing a new trial we do not entirely abdicate our reviewing functions in such cases. This Court, too, has the duty to determine from the record whether or not the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative so that right may be given another opportunity to prevail." It was there held that the court below, in invading the province of the jury and nullifying its verdict for the additional defendant, showed a clear abuse of discretion, and the order of the court granting a new trial was reversed. So in *Martin v. Arnold*, 366 Pa. 128, 77 A.2d 99, and in *Stewart v. Ray*, 366 Pa. 134, 76 A. 2d 628, in each of which cases the trial court granted a new trial on the ground that the verdict was against the weight of the evidence and that the interests of justice required a

---

[3] *Landis v. Conestoga Transportation Co.*, 349 Pa. 97, 101, 36 A. 2d 465, 467.

new trial, it was held, upon a review of the evidence, that the court had abused its discretion and that the verdicts should be reinstated and judgments entered thereon. An examination of the present record discloses that no specific exceptions to any part of the charge were taken by plaintiffs' counsel, nor does any substantial error appear therein or in the admission or rejection of evidence. On the whole, therefore, we cannot conclude other than that it was error on the part of the court below to grant a new trial to plaintiffs as to the City of Pittsburgh and—as well for the additional reasons previously discussed—as to the Pittsburgh Railways Company.

The order granting plaintiffs' motion for a new trial is reversed, and it is directed that judgment be entered on the verdict for defendants.