Stevens, Appellant, *v.* Reading Street Railway Co.

Argued January 10, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO AND ARNOLD, JJ.

*Charles H. Weidner,* with him *Stevens & Lee,* for appellants.

*Daniel H. Huyett, III* and *Ralph C. Body,* with them *Body, Muth, Rhoda & Stoudt,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, March 13, 1956:

This action in trespass was instituted in August, 1949 by the plaintiffs, Clara Stevens and Mike Stevens, her husband, against Reading Street Railway Company to recover damages for personal injuries sustained by Clara Stevens when alighting from the defendant company's bus. The Railway Company joined the City of Reading as an additional defendant alleging that the City was solely or jointly liable to the plaintiffs. The City of Reading answered and then moved for judgment on the pleadings averring that the plaintiffs had not complied with the Act of July 1, 1937, P. L. 2547, 53 PS §2774, requiring the plaintiffs to give written notice to the City of their claim within six months from the date of its origin. This motion was denied by the court below in an opinion holding that the City was properly joined as an additional defendant for the purpose of conveniently determining in one suit the right of the Railway Company, if found liable for plaintiffs' damages, to obtain contribution from the City as a joint tortfeasor, but that the City could not be held solely liable for plaintiff's injuries.[1] The case was tried before

---

[1] Subsequent to this opinion, the lower court signed an order dated May 8, 1951 allowing the case to proceed directly against the City on the ground of direct liability to the plaintiffs. Counsel for the City objects to this order here on the ground that testimony was not taken and the requirement in the Act of 1937, supra, that a reasonable excuse for failure to give the required six months' notice to the City must be shown, was not met. Our decision makes determination of this question unnecessary.

a jury in May, 1951, when, after the plaintiffs had completed their testimony on the question of negligence, the court entered compulsory nonsuits in favor of both defendants. Thereafter, an application to take off the nonsuits was granted and the case was retried in April, 1954. The jury returned verdicts of $134.00 for Mike Stevens and $2,900.00 for Clara Stevens, against both defendants. Defendants filed motions for new trial and for judgment non obstante veredicto and the court en banc, one judge dissenting, entered judgments n.o.v. in favor of both defendants. From these judgments plaintiffs appeal.

Since this is an appeal from the entry of judgment n.o.v., we will consider the testimony together with all reasonable inferences therefrom in the light most favorable to the plaintiffs: *Stewart v. Pittsburgh Railways Company,* 379 Pa. 260, 108 A. 2d 767. Accordingly, the facts may be stated as follows: On the morning of December 11, 1948, a clear, dry day, the plaintiffs were passengers for hire on a bus owned and operated by the defendant, Reading Street Railway Company, a common carrier. The bus was traveling in a southerly direction on North Fifth Street, approaching the intersection of Fifth and Washington Streets in the City of Reading, where the plaintiffs and other passengers intended to alight. The bus regularly stopped on the west cartway of Fifth Street flush with the west curb and with the front of the bus about even with the north line of the north crosswalk over Fifth Street. On the day of the accident, however, defendant's bus stopped a considerable distance north of its regular stopping place, at an angle, with its front end approximately one and one-half feet away from the west curb and the rear end five or six feet from the curb.

The wife-plaintiff was approximately in the middle of a line of fifteen or sixteen persons who got off the

bus at this point. The bottom step at the exit door which was located toward the rear of the bus, was fourteen and a half inches from the surface of the roadway. Mrs. Stevens, in alighting, stepped off this bottom step with her right foot first, and then her left foot went into a hole seventeen inches long, a foot wide and about six inches deep, throwing her to the ground. Part of the hole was under the bus and part extended out beyond the south side of the exit steps. When Mrs. Stevens stepped down to the road surface, two passengers were standing to her left at the exit door which prevented her from seeing the hole. Another woman passenger who preceded the wife-plaintiff from the bus, fell at the same hole, but Mrs. Stevens did not witness this incident, and did not know how it occurred. Mrs. Stevens never saw the hole until she fell and did not know of its existence.

The hole had existed continuously for a period of approximately six weeks prior to the accident. After the wife-plaintiff fell, and while being assisted to her feet, the operator of defendant's bus said to her: "I am sorry, it is my fault, I stopped at the wrong place." The bus operator had driven a bus over the same route for four consecutive months prior to the accident, five days a week.

North Fifth Street at the time and place of the accident was designated as a State highway under Section 2 of the Act of June 22, 1931, P. L. 720, 36 PS §103.

The first question to be decided is whether plaintiffs' evidence was sufficient to enable the jury to find negligence on the part of the defendant Railway Company. The law is clear that a common carrier for hire owes a duty to its passengers not only to exercise the highest degree of care and diligence in carrying them to their destination, but also must exercise reasonable diligence to give passengers a safe place to alight and pass out of

danger: *Harris v. DeFelice,* 379 Pa. 469, 109 A. 2d 174; *O'Malley v. Laurel Line Bus Co.,* 311 Pa. 251, 166 A. 868; *Brown v. Beaver Valley Motor Coach Company et al.,* 365 Pa. 578, 76 A. 2d 403. In *O'Malley v. Laurel Line Bus Co.,* supra, p. 255, the rule is clearly stated that ". . . If the person in charge of a car used for the carriage of passengers for hire, knowingly permits one of them to get off the vehicle at a dangerous place, which is not the usual stopping place, and the dangerous character of which the passenger could not see and did not know, the carrier will be liable for the resulting injuries, if any, to the passenger: McCollum v. Pitts. Rys. Co. (No. 1), 51 Pa. Superior Ct. 637, . . .". We are of the opinion that the present case is governed by the above stated rule of law. Here the hole in question had existed for at least six weeks prior to the accident. The hole was a large one, being approximately one and a half feet long, a foot wide and six inches deep. During the entire six weeks that the hole was continuously in existence, it was directly in the route of defendant's bus operator in approaching the regular bus stop. From this evidence the jury could reasonably infer that defendant's employe knew or should have known of the existence of the hole and of the apparent danger to passengers if they were to alight at this point. In addition the wife-plaintiff testified that the operator of defendant's bus said to her immediately after the accident: "I am sorry, it is my fault, I stopped at the wrong place." No objection was made at the trial to the admission of this statement into evidence. Accordingly defendant's complaint in this Court that the evidence was improperly introduced because it was hearsay and not a spontaneous utterance sufficient to come within the res gestae exception, is without merit since no objection was interposed. Where inadmissible evidence, including hearsay, is admitted without objection and

is relevant and material to the fact in issue, it is to be given its natural probative effect as if it were in law admissible: *Poluski v. Glen Alden Coal Co.*, 286 Pa. 473, 133 A. 819; *Harrah v. Montour Railroad Company*, 321 Pa. 526, 184 A. 666.

It is undisputed that the regular stop for the bus on the day of the accident was on the west cartway of Fifth Street, flush with the west curb and with the front of the bus about even with the north line of the north crosswalk over Fifth Street; nor is there any evidence that this was not a perfectly safe place for the defendant's bus to have stopped. Instead of stopping at the regular bus stop, however, defendant's bus stopped a considerable distance north of its regular stopping place, and in such a manner that the hole in question extended underneath and directly beside the exit door from which Mrs. Stevens alighted.

In *Gourlay et ux. v. Phila. R. T. Co.*, 100 Pa. Superior Ct. 419, plaintiff stepped from defendant's street car, which had not stopped at the regular stopping place, into a hole in the street which she had not seen, although she used reasonable care in alighting. It was there held that the question of defendant's negligence was for the jury even in the absence of evidence as to how long the hole in the street had been there or that the defendant's employes knew of its being there. In *Gerlach et ux. v. City of Philadelphia et al.*, 103 Pa. Superior Ct. 401, 157 A. 212, plaintiff stepped from defendant's street car into a trench which she did not see and which was known to exist by those in charge of the car. There was a safe place to discharge passengers a short distance from the place where the car stopped. The question of the transit company's negligence was held to be a matter for the jury. In *Brown v. Beaver Valley Motor Coach Company et al.*, supra, in holding that the matter of defendant bus company's negligence

was properly left for the jury, this Court said at pages 581, 582: ". . . While it is true that common carriers are not liable for injuries resulting from *ordinary* defects in the street (Perret v. George, 286 Pa. 221, 133 A. 228), they must exercise reasonable diligence to give passengers a safe place to alight and pass out of danger: . . . This the Bus Company failed to do. The driver of the bus knew that plaintiff would have to reach the sidewalk. He also knew or should have known that at the place where he stopped the bus the mounds of earth and the unevenness of the ground would make this a hazardous venture. By discharging plaintiff in a place of obvious danger, the driver failed to exercise the degree of care which the law requires. . .".

In *McCollum v. Pittsburgh Railways Company (No. 1)*, 51 Pa. Superior Ct. 637, a case frequently cited by this Court, where plaintiff alighted from defendant's car at a place which was not a regular stopping place and which was in close proximity to a pile of stones onto which passengers would naturally step in getting off the car, it was held that the jury might well find a case of negligence, since defendant's employes had seen the stone pile and plaintiff had not.

The cases relied on by the defendant Reading Street Railway Company are distinguishable on their facts. In *Carroll v. Pittsburgh*, 368 Pa. 436, 84 A. 2d 505, the plaintiff stepped from defendant Pittsburgh Railways Company's trolley car which was stopped at the regular stopping place, into a hole which she described as being about three inches deep and larger than a dinner plate. This Court held that the question of negligence on the part of the defendant railway company was not for the jury, stating at p. 444 that ". . . it would be unjust and impracticable to hold street railway companies liable to passengers alighting from their cars on busy city streets, where, especially in the case of asphalt pavings,

there are frequently holes, depressions and worn out places of various dimensions which may remain for considerable periods of time until repairs are made by the public officials who alone are responsible for the main-tenance of the highway in good order and repair. . .". Attention was called to the fact that many holes existed at the particular intersection where the trolley car regularly stopped, ". . . and holes no doubt existed at many other intersections, so that . . . it would have been practically impossible for it to stop its cars at the various streets along the route which it traversed." However, this situation is not present in the instant case since rather than stopping at the normal stopping place, the operator of defendant's bus elected to stop a considerable distance therefrom and in such a manner that the hole was underneath and directly beside the exit door. It was also pointed out in the *Carroll* case at p. 440 that ". . . there are authorities to the effect that where a passenger is mistakenly led to alight at an extremely dangerous place which is not the usual stopping place the carrier may be held liable for any injuries which the passenger thereby sustains. [Citing cases] But in the present instance the car stopped at a regular stopping place at the intersection of two city streets, . . .". While the cases referred to in the foregoing statement are properly characterized as holding that there is liability where the bus stops at an *extremely dangerous* point for alighting between intersections, the holding in these cases does not preclude a finding of liability where the condition, although not *extremely* dangerous, is of such character as may be reasonably foreseen as a hazard that could produce injury: Restatement, Torts, §284. Here the hole in the street was sufficiently dangerous to cause the fall of two alighting passengers. The question is whether a reasonably prudent person in the position of the bus opera-

tor, chargeable with knowledge of the condition which existed, exercised the care required under the circumstances, and this was a question for the jury. Unquestionably the hazard was created by the stopping of the bus at other than the regular stopping place so that the exit steps were over the hole in the street which caused the accident. Aside from the fact that in the *Carroll* case the depression in the street created a much less dangerous hazard than in the instant case, the reasonableness of the bus operator's action there must be considered in the light of the necessity of discharging passengers at street intersections; the risk was not of such magnitude as to outweigh the utility of the act. See Restatement, Torts, §291.

*Hoffman v. Philadelphia Transportation Co.*, 369 Pa. 212, 85 A. 2d 144, may also be distinguished on its facts. There the defendant's bus stopped at its regular stopping place, although some six to eight feet from the curb, and plaintiff, while alighting, stepped into a hole about two feet long, eight or ten inches wide and two to three inches deep. This Court, in sustaining the lower court's action granting binding instructions for the defendant, pointed out that no evidence was presented by the plaintiff as to the length of time the hole existed, or that the bus operator knew of its existence. In the present case there was evidence from which the jury could find that the hole was continuously in existence for six weeks, and that the bus driver had knowledge of it.

The present case is different from those where the passenger, after successfully stepping from the street car or bus, is then injured by stepping into a hole located between the car and the curb. Such was the case in *Perret et ux. v. George et al., Receivers*, 286 Pa. 221, 133 A. 228. The case of *Thompson v. Philadelphia et al.*, 129 Pa. Superior Ct. 174, 195 A. 174, is distinguish-

able in that as in the *Carroll* case, supra, the defendant transit company's trolley car had stopped at its regular stopping place. *MacDonald et ux. v. Philadelphia Rural Transit Company*, 147 Pa. Superior Ct. 220, 24 A. 2d 37, is also not in point since, as stated at p. 224, ". . . there was no evidence that the operator of defendant's bus had knowledge of the existing defect, or had any reason to suspect its presence, or knowingly permitted wife plaintiff to get off at a dangerous place. . .".

As to the question of contributory negligence on the part of the wife-plaintiff, the defendant railway company maintains that Mrs. Stevens was negligent as a matter of law on the ground that had she waited a moment, the passengers blocking her view would have moved, and she would have then seen the hole and not fallen. We cannot nor could the court below agree with this contention which would hold the plaintiff to a higher standard of care than is ordinarily exercised by a person in alighting from a bus under similar circumstances. The wife-plaintiff was in the approximate middle of a line of passengers who were alighting from the bus. Under the conditions present, she could not be held negligent as a matter of law: *Thompson v. Philadelphia et al.*, supra. *Mulford et ux. v. Phila. Rapid Transit Co. et al.*, 310 Pa. 521, 165 A. 837, is inapplicable on its facts since there the plaintiff was the last passenger to alight from the trolley car and fell after taking a couple of steps away from the car. *Fordyce et ux. v. White Star Bus Lines*, 304 Pa. 106, 155 A. 98, clearly is not in point since in that case there was no evidence of any defect in the street, and plaintiff, by stepping off the bus step in the night expecting to step on the curb, blindly trusted a dangerous situation.

Turning to the question of the liability of the defendant City of Reading, we are in agreement with the majority opinion of the lower court that it is in no way

responsible. It is not disputed that North Fifth Street at the place where the accident occurred is a State highway, having been designated such by Section 2 of the Act of June 22, 1931, P. L. 720, as amended by Section 1 of the Act of June 25, 1937, P. L. 2320, 36 PS §103. The only question then to be decided is as to the responsibility of the defendant City for the repair and maintenance of this part of the State Highway System, which requires consideration of the applicable statutes.

Section 1 of the Act of June 22, 1931, P. L. 720, 36 PS §102, under Section 2 of which North Fifth Street originally became a State highway, provides, inter alia, that those streets taken over by the Commonwealth are ". . . to be maintained, constructed, reconstructed and resurfaced at the expense of the Commonwealth upon the terms and conditions and subject to the limitations hereinafter provided." Section 522 of the Act of June 1, 1945, P. L. 1242, 36 PS §670-522, known as the State Highway Law, states that "After the streets designated as State highways shall have been taken over by the Commonwealth, they shall be maintained, constructed, reconstructed and resurfaced by the department at the expense of the Commonwealth, . . . Maintenance shall not include snow removal or street cleaning, and shall be limited to the portion of the street between existing curb lines available to vehicular traffic. . .". Section 525 of the State Highway Law provides that no opening can be made in any State highway until a permit is obtained from the highway department or from the City if the City is authorized in writing to act for the department. Section 526 states that before the commencement of any work authorized by Section 522, the City, on proper notice from the Secretary of Highways, must establish and maintain an adequate detour until the work is finished. Section 407 of the Act, 36 PS §670-407 provides: "For the purpose of uniform, efficient,

and economic maintenance and repair of the State highways, the department shall purchase all necessary material, and shall appoint and employ all necessary labor or repirmen, who shall at all times in the year keep the State highways free from holes, ruts, sticks, loose stones, or other impediments of any kind, which tend to interfere with free and easy travel, or which if permitted to exist might tend to the deterioration, injury, or destruction of the highway." The effect of these provisions was to place the control and responsibility for repair and maintenance of North Fifth Street, the scene of the accident, upon the Commonwealth. Since the Commonwealth, by statute, has relieved the City of the obligation to repair the hole, the City cannot be guilty of negligence since there must be a duty and a breach of that duty to produce a right of action.

In *Brunacci et al. v. Plains Township,* 315 Pa. 391, 173 A. 329, plaintiff fell into an open water drain on a street which originally had been a township road, later a county road, and eventually taken over by the Commonwealth as a State highway under the Sproul Act of May 31, 1911, P. L. 468, which has since been repealed. The Sproul Act provided that the roads taken over in the State Highway System should thereafter be constructed, improved and maintained by the State Highway Department at the expense of the Commonwealth. In affirming the lower court's action of entering a compulsory nonsuit against the plaintiffs, we held that the township was not liable unless there was legislation compelling repair and maintenance of the road in question, stating at p. 394: ". . . When the State took over the highways under the Sproul Act, it provided that they should be constructed, improved and maintained by the state highway department, at the sole expense of the Commonwealth, and that they were to be under the exclusive jurisdiction of the state highway depart-

ment. The effect of such comprehensive language was unquestionably to relieve the county, which had theretofore relieved the township of all liability for damages for an injury." In *Heinlein, Exrx. v. Allegheny County*, 374 Pa. 496, 98 A. 2d 36, where the decedent was killed through the improper maintenance of a bridge, we held that the responsibility for repairing the bridge was on the Commonwealth, since it was part of a State highway, and that therefore the county could not be found negligent in failing to repair it.

The case of *McCracken v. Curwensville Borough*, 309 Pa. 98, 163 A. 217, relied on by the appellants, is not in point since there the Commonwealth assumed only the right to *improve or reconstruct* the highway at the expense of the Commonwealth. We held in the *McCracken* case that Section 20 of the then applicable Sproul Act of 1911, providing that the Commonwealth shall keep the State highways free from ruts, holes, sticks, loose stones and the like, when considered with Section 10 thereof, applied only to State highways *outside* of the cities, boroughs and incorporated towns. Section 407 of the State Highway Law of 1945 and its related sections contain no such limitation.

Although not alleged in any of the plaintiffs' pleadings, and not argued in the lower court, appellants suggest that the hole here constituted a nuisance and that the City was obligated to abate this nuisance either by repairing it or by notifying the Commonwealth of its existence. It is a sufficient answer that our cases hold that no liability can be imposed on the City unless there is legislation compelling repair and maintenance: See *Brunacci et al. v. Plains Township; Heinlein, Exrx. v. Allegheny County*, supra.

Appellant also argues that since under Section 521 of the State Highway Law, 36 PS §670-521, the City is obligated to "regulate traffic" and "police" a State high-

way within a city, then the city has a concurrent duty with the State to repair. The answer to this is that the word "police" is used in the statute in its ordinary and well defined meaning of maintaining law and order, and does not refer to repair and maintenance which are expressly placed upon the Commonwealth.

It is our opinion that the Legislature has placed the sole obligation to repair the street in question upon the Commonwealth thereby relieving the City of responsibility.

The judgment is affirmed as to the defendant City of Reading; it is reversed as to the defendant Reading Street Railway Company and the record remanded for disposition of the Railway Company's extant motion for new trial and appropriate proceedings thereafter consistent with this opinion.