## Wilt v. Blazier, Appellant.

Argued April 22, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

144

*Frank B. Warfel,* with him *Harry Blazier,* for appellant.

*Robert C. Haberstroh,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, May 23, 1955:

This litigation arose out of an automobile collision occuring about 1 A.M. on January 2, 1951 on Highway Route 220 where it runs southward from the Borough of Tyrone to the City of Altoona in Blair County. Howard Boggs was operating a 1950 Mercury two-door sedan southward on this highway and ran into the rear of a 1947 Chevrolet four-door sedan being operated by Harry Blazier, at a point some distance south of an intersecting road from which Blazier had entered upon the highway and was proceeding southward. John E. Wilt, Jr., a passenger in the Boggs car, brought an action of trespass against Blazier and Howard Boggs to recover damages for personal injuries sustained in the accident. The car driven by Howard Boggs had been borrowed for his own personal use from his brother, Stanley E. Boggs. The latter as owner brought an action against Blazier to recover for damage done to his car. The cases were consolidated for trial and

the jury rendered a verdict in Wilts' suit in the amount of $2,500 against Howard Boggs but exonerated Blazier. It also found a verdict in favor of Blazier in the suit brought against him by Stanley Boggs. Wilt, Howard Boggs and Stanley Boggs respectively filed motions for new trial and the court, for the reasons hereinafter discussed, entered an order granting a new trial generally in both cases. Blazier appeals therefrom.

The accident happened on a clear night and the roadways were dry. Route 220 is a three-lane concrete highway 33 feet in width with berms about 9 feet in width on both sides. Joseph Rio, a State Policeman, testified thereto and also testified, without giving exact measurements, that the intersecting road running east and west upon which Blazier was travelling westwardly when he entered Route 220 was "of good width". It was established and not disputed that there was a "Stop" sign about 3 feet from the eastern berm of Route 220 on the north side of the intersecting road, at which there was a clear view up and down Route 220 of about two miles. Blazier, who had four passengers in his sedan, testified that he stopped at this "Stop" sign and before entering the highway looked and saw a car approaching from his right which was 300 yards or more distant and a car from his left 150 yards away. He fixed the distance of the car approaching from his right ( which turned out to be the Boggs car) by a cement bridge located 300 yards north of the intersection, and testified that when he saw the car it had not reached this bridge; that he proceeded past the first two lanes of the highway, turned into the far or southbound lane and proceeded southwardly thereon a distance of 100 feet when he was struck in the rear by the Boggs car; that the impact caused his car to twice turn end over end before it finally came to

rest on its side at a point in the highway about 100 or 150 feet from the point where it was struck; and that his car was completely demolished. Rio, the State Policeman, called as a witness by both sides, and who arrived at the scene of the accident 20 minutes after it occurred and before either car was moved, testified that the point of impact which was determinable by grease, oil and debris on the highway, was, as testified to by Blazier, 100 feet south of the intersection; that the Blazier car came to rest 100 feet farther south; that the damage to the two cars clearly indicated that the Blazier car was struck in the rear by the Boggs car "with great force" and that damage to both sides and the roof of the Blazier car also indicated that it had turned over, as stated by Blazier. The officer further testified that after the impact the Boggs car travelled forward about 85 feet, coming to rest on the west berm, facing north; that for the distance stated the dirt on the berm was "gouged up" by the imprint of Boggs' car; that there were no skid or tire marks on the highway north of the point of impact, that is, in the direction from which Boggs approached. The officer interviewed Boggs at the scene of the accident and testified that Boggs said he was going 50 miles per hour and that although he saw the rear lights of the Blazier car, he had not applied his brakes; that he asked Boggs why he had not applied his brakes and Boggs "just shrugged his shoulders and walked away." The officer also testified that Boggs stated he had had four "beers."

Miss Joan Haigh who was seated next to Blazier in his car and Norman Cherry, another occupant, corroborated all of the material facts in Blazier's account of his operaton of the car and happening. Both testified that when Blazier entered the intersection the Boggs car was 300 yards or more distant. Their

testimony was unshaken on cross-examination. The
defendant Blazier was first called as on cross-examin-
ation and was examined at length by counsel for both
plaintiffs and thereafter testified on his own behalf.
His testimony was consistent throughout and at no
time varied on any of the material facts. The testi-
mony of the State Policeman was clear, definite and
very evidently fair and impartial.

Howard Boggs' version of the accident rested on
his own testimony and that of William Grove who was
one of three passengers in the Boggs car. Grove re-
membered and contributed little other than that they
had been at "quite a few places" in Altoona, including
a tavern called the "Coney Island" where he had some
beers. He couldn't tell how many and couldn't remem-
ber whether Boggs drank anything; that the party
drove around Altoona and then went to Bellwood which
was north of the scene of the accident; that he didn't
remember where they stopped at Bellwood. The de-
fendant Howard Boggs testified that he had "2 or 3
beers" during the course of the evening; that he drove
from Altoona to Bellwood and then drove south back
toward Altoona on Route 220; that he was travelling
from 45 to 50 miles per hour; that he saw the Blazier
car at the "Stop" sign of the intersection when he,
Boggs, was about 175 feet distant; that he saw Blazier
enter the highway when he, Boggs, was 150 feet away;
that he didn't reduce his speed; that Blazier turned
left into the middle lane and that he struck the Blazier
car 75 feet from the intersection when, according to his
account, it turned from the middle into the south-
bound lane. He testified the Blazier car was moving
at a speed of less than 20 miles per hour and since
Boggs was admittedly travelling at 45 to 50 miles
per hour, his story was highly improbable. In con-
trast to the testimony of Blazier, Boggs' testimony

was self-contradictory, vague and evasive, and that of Grove even more so.

The plaintiff Wilt estimated Boggs' speed at between 50 and 55 miles per hour; said he saw Boggs and Grove go to the bar at the "Coney Island" but didn't know whether Boggs had anything to drink; that at the time of the accident he was talking to the occupants of the back seat of the car and that he knew nothing of the happening except that he heard someone say "look out" and then saw the Blazier car "right in front of us."

Boggs in rebuttal denied that he told Cherry, as testified to by the latter, that he had had six bottles of beer in Bellwood. He did not deny that he had told Officer Rio that he had had four beers, as testified to by the officer. Cherry testified that he smelled alcohol on Boggs' breath and both Cherry and Blazier said that Boggs was slow of speech and in their opinion "under the influence." Rio testified that he "wouldn't say" that Boggs was "drunk" or "under the influence".

Boggs testified that the windows on the right side of Blazier's car were "steamed up a little bit". He first said he observed this after the accident, but later said he observed it before the accident. Blazier and his passengers, Miss Haigh and Cherry, categorically denied this.

Officer Rio testified that, based on the markings on the highway, the damage to the cars and the distances they respectively travelled after the impact, in his opinion Boggs "was exceeding far over 50 miles per hour". On motion of counsel for the plaintiffs this testimony was stricken from the record and the jury instructed to disregard it. Obviously the jury required no assistance by way of expert or opinion testimony to determine that the Boggs car must have been going at

a highly excessive rate of speed, to catapult the Blazier sedan with five occupants 100 feet forward in the manner described, and then continue forward for a distance of 85 feet. The court in its opinion states: ". . . The testimony not only indicates that he [Boggs] was traveling too fast for conditions but also that he did not have his vehicle under proper control.".

The court granted a new trial on the ground that the verdict was against the law and the weight of the evidence, stating: "We have searched the testimony with care to discover any scintilla of evidence that, if believed by the Jury, could have warranted the general verdict which they have returned. Having failed to find any such evidence, we have no alternative but to hold that the verdict was against the law and the weight of the evidence and accordingly grant the Plaintiff a new trial.". It appears from the opinion that this conclusion was reached because the court considered the defendant Blazier guilty of negligence *as a matter of law* in not being sufficiently observant of traffic coming from his right; that although he looked when he entered the highway and saw the Boggs car about one-fifth of a mile away, he should have looked again when he entered the southbound lane. Before discussing the court's conclusion in this regard, it is necessary to note that in its opinion the court considers the accident to have occurred "at the inter-section" and in reviewing the facts mistakenly states that when Blazier looked to the right he observed the Boggs car *150* yards from the crossing and that Blazier admitted "that his windows were steamed". It is difficult to understand these misstatements since the trial judge who wrote the opinion of the court, in his charge to the jury expressly referred to Blazier's corroborated testimony that the Boggs car was *300* yards *or more* distant, and at least twice in his charge called

the attention of the jury to Blazier's denial that the windows of his car were "fogged or steamed".

The evidence, if not conclusive, was overwhelming that the accident did not happen in the intersection but after the defendant Blazier had negotiated the crossing and had proceeded 100 feet to the south thereof. The court points to a number of decisions relating to accidents happening in street intersections where the duty of the operator of a car to look to the right when he reaches the middle of the street, is declared. We are of the opinion that under the circumstances here present the defendant Blazier could not be held guilty of negligence as a *matter of law;* that whether he was negligent was a *matter of fact* for the jury. When Blazier entered the intersection and saw the Boggs car about one-fifth of a mile away, he had the right to assume that Boggs would not proceed at an excessive and illegal rate of speed, and that he, Blazier, could with safety turn into the southbound lane. While the driver of an automobile attempting to cross a through highway from a side street has a duty to yield the right-of-way to all vehicles approaching on the through highway in any direction, he is not so required to yield the right-of-way if he is so far in advance that in the exercise of reasonable care he is justified in believing he can cross ahead of approaching vehicles without danger of collision: See *Korenkiewicz v. York Motor Express Company,* 138 Pa. Superior Ct. 210, 10 A. 2d 864; *Dougherty v. Merchants Baking Company,* 313 Pa. 557, 169 A. 753; *Van Tine et ux. v. Cornelius, Admr.,* 355 Pa. 584, 50 A. 2d 299. We think that Blazier was justified in concluding that he could safely cross and turn into the south lane of the highway in view of the fact that the Boggs car was 300 yards or more from the crossing. At least, whether or not he was justified in so concluding was

for the jury. Moreover Blazier's failure to look a second time before entering the southbound lane was not the cause of the accident for he had completely cleared the intersection and the collision did not occur until he was a substantial distance south of it. Under the evidence the jury could find, and its verdict indicates that it did so find, that the negligence of Boggs was the proximate cause of the accident. Indeed if Boggs' dubious story were accepted, he places the point of collision 75 feet south of the intersection, claiming that Blazier was proceeding southward in the center lane, and then turned suddenly into Boggs' lane of travel. If this were true, the negligence of Blazier as the cause or a contributing cause of the accident would have been his failure to look to his right and rear before turning out of the center lane, and not his failure to look a second time when in the intersection. In any event we are of the opinion that Blazier's negligence, if any, was a question of fact for the jury and he could not be declared guilty of negligence as a matter of law.

Since Blazier cannot be held guilty of negligence as a matter of law, the verdict was clearly not against the weight of the evidence. A ruling to the contrary is reviewable. While an award of a new trial is an inherent power of the court and its exercise a matter of discretion, the discretion is not an absolute one and it is the duty of this Court to review and determine whether there has been an abuse of discretion: *Jones et vir v. Williams et al.*, 358 Pa. 559, 58 A. 2d 57; *Carroll v. Pittsburgh*, 368 Pa. 436, 84 A. 2d 505, and cases cited therein. We are satisfied that the grant of a new trial on the ground that the verdict was against the weight of the evidence was an abuse of discretion. In fairness to the lower court we feel that its holding in this respect was the result of its untenable conclu-

sion that Blazier was guilty of negligence as a matter of law. Since his negligence, if any, was a question of fact, under all the evidence the jury's verdict imposing liability upon Boggs and exonerating Blazier was fully justified and should not be nullified.

The plaintiff Wilt also assigned in the court below as a reason for new trial the inadequacy of the verdict returned against Boggs. The court having granted a new trial generally for the reasons stated, did not pass on the alleged inadequacy of the verdict. Wilt, who suffered a serious injury to his eye, expressed the belief that the impact caused his head to go through the windshield. The doctor called by him said that Wilt had a laceration of the eye as the result of the accident and that his eyesight was impaired; that even with corrective glasses, his vision was reduced to 20/70; than an operation would not give him normal sight in connection with the other eye; that without an operation he would suffer no pain in the future but would suffer inconvenience. Wilt was discharged from the hospital about two weeks after the accident and returned to steady employment with the same employer on April 11, 1951, 3 months and 10 days after the accident. He stated that to regain his employment he had to relinquish benefits in case of sickness and accident and execute papers releasing his employer from liability in case anything happened to him in his employment. He stated that before the accident he worked "pretty regularly" and earned about $190 a month. His medical and hospital expenses amounted to $360.83, his loss of wages $570.00, or a total of $930.83. It appears, therefore, that of the verdict of $2,500 about $1,500 was awarded him for pain, suffering and inconvenience. Undoubtedly a larger verdict representing a more liberal allowance for pain, suffering and inconvenience would have been justified, but

under all the circumstances we are not disposed to disturb the award of the jury. It is to be noted that the question of inadequacy of the verdict is not included in the appellee's Counter-Statement of Questions Involved nor is there any comment or argument thereon contained in his brief.

The order awarding a new trial is reversed and the record remanded for entry of judgments in accordance with the respective verdicts rendered.