## Morano *v.* Norman, Appellant.

Argued March 12, 1956. Before STERN, C. J., JONES, BELL, MUSMANNO and ARNOLD, JJ.

24

*Frank B. Quinn,* with him *Quinn, Leemhuis, Plate & Dwyer,* for appellant.

*John G. Gent,* with him *Edward E. Petrillo, Brooks, Curtze & Gent* and *Petrillo, Petrillo & Cavanaugh,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 16, 1956:

The injuries sustained by the plaintiff in this case, James Morano, grimly portray how a highway becomes a shambles when motorists drive their steel and iron vehicles against the non-resistant flesh, bone and cartilage of human beings. As the result of an accident, of which he was the victim, Morano has lost complete articulation of speech and at the trial could reply to questions only with head-shakings, gesticulations and guttural sounds.

The accident was the common intersectional collision where two vehicles, approaching from different directions, fought for possession of the same spot on the unyielding highway. It was the morning of March 24, 1953, in Erie County, when the plaintiff, driving a truck tractor westwardly on Route 6, arrived at the point where it crosses Route 19 at the same time that John F. Norman was driving his automobile southwardly on Route 19 where it crosses Route 6. These converging paths violently coalesced and, with injuries resulting, a lawsuit ensued. The jury returned a verdict for the plaintiff and the defendant seeks judgment n.o.v.

In considering possible reversal of a jury verdict, we are required to read the record in the light most favorable to the verdict winner. Doing this, we find

that the plaintiff did observe the rules of the highway and cannot, as argued by the defendant, be successfully charged with legal contributory negligence. When Morano arrived at the intersection of Routes 19 and 6 he stopped in obedience to a Stop Sign, waited from one to three minutes, looked in both directions and then began his journey across Route 19. The following testimony taken from the record will show how the collision occurred, and reveal at the same time the nature of the plaintiff's tragic inability to speak: "Q. Then what did you do? Then you started to go? A. (Affirmative sound.) Q. And did you look again? A. (Affirmative sound.) Q. Did you see anything coming then? A. (Affirmative sound.) Q. You saw a car coming? How far was this car from the place where you were as you were crossing? Near or far? MR. QUINN: Now we will have to object to that. BY THE COURT: Well, why don't you get those nice looking fingers of yours to working again? Ask him fifty feet, or sixty feet or seventy-five feet. In other words, ask him if he will indicate with his fingers, or if you know what the answer is going to be approximately, why put it that way? MR. PETRILLO: Let's start with hundreds then. Q. Now when I put one finger, it means one hundred feet. Do you understand? A. (Affirmative sound.) Q. Now I start with eight hundred. Eight hundred feet away did you see the car? A. (Affirmative sound.) Q. It was about eight hundred feet away? A. (Affirmative sound.) Q. When you started to cross? A. (Affirmative sound.) Q. And did this car strike your tractor at any time? Did the car hit you? A. (Affirmative sound.) Q. Did the car that you saw strike you? A. (Affirmative sound.) Q. Did the car that struck you slow down at any time? A. (Negative sound.) Q. How far across were you across the intersection when this car

struck you? Were you in the middle or over on the other side practically? A. (Witness gestures.) Q. On the other side? Practically on the other side? A. (Affirmative sound.) MR. QUINN: He didn't say practically on the other side. He said on the other side. MR. PETRILLO: Well, he cannot supply all the words. I have to help him a little. MR. QUINN: I know, but he didn't say practically. MR. PETRILLO: Well, I will take out 'practically.' Q. Were you in the center or on the other side of the intersection? A. (Unintelligible sound.) Q. More on the other side? On the west side? A. (Affirmative sound.) Q. Was there much force when the car struck your truck? A. (Affirmative sound and gestures.) Q. What happened to the tractor? A. (Witness puts his hand to his neck.)"

A disinterested witness, Grace Sauers, testified that she saw the plaintiff stop at the intersection and that the defendant's car was 350 feet away when the plaintiff arrived at the center of Route 19. She also testified that the defendant was travelling at the rate of 70 miles per hour. Another witness, Viola Cains, testified that the plaintiff's truck had almost reached the other side of Route 19 when the defendant's car was still 100 feet away. It cannot be doubted that with evidence of this character the Trial Court could not possibly have declared the plaintiff guilty of contributory negligence as a matter of law.

It appears that prior to the trial the plaintiff had given a deposition which, in one or two details, contradicted his testimony at the trial. The defendant urges in this connection a defect in the plaintiff's case, but it was for the jury to decide whether the contradictory statements could be reconciled. (*Smith v. Flannery*, 383 Pa. 526, 530.)

The defendant argues further that the plaintiff drove across the intersection "blindly," but the evidence does not substantiate the charge. As one reads the record, one sees the plaintiff halted at the Stop Sign looking to his right and left. Finding the road clear, he moves forward, and as he enters into Route 19 he perceives the defendant's vehicle 800 feet away. It was for the jury to decide whether with such an interval of distance between him and the defendant's car he could not or should not have assumed that he could pass safely to the other side.

In *Wilt v. Blazier*, 382 Pa. 143, this Court said: "While the driver of an automobile attempting to cross a through highway from a side street has a duty to yield the right-of-way to all vehicles approaching on the through highway in any direction, he is not so required to yield the right-of-way if he is so far in advance that in the exercise of reasonable care he is justified in believing he can cross ahead of approaching vehicles without danger of collision."

We are satisfied that the jury was justified in concluding that the plaintiff was free of contributory negligence and that the accident would not have happened if the defendant had not borne down at the excessive rate of speed of 70 miles per hour on the plaintiff directly in his path.

Judgment affirmed.