Kerr *v.* Philadelphia Transportation Co.,
Appellant.

Argued June 12, 1958. Before RHODES, P. J., HIRT,
GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS,
JJ.

*Philip Price*, with him *Norma L. Shapiro, William J. McKinley, Jr.,* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellant.

*Meyer A. Bushman,* with him *B. Nathaniel Richter,* and *Richter, Lord & Levy,* for appellee.

OPINION BY ERVIN, J., September 11, 1958:

This is an appeal by the defendant transportation company from the refusal of its motion for judgment n.o.v. in a trespass action.

We are obliged to consider the testimony, together with all reasonable inferences therefrom, in the light most favorable to the plaintiff: *Stewart v. Pittsburgh Railways Co.,* 379 Pa. 260, 108 A. 2d 767. Accordingly, the facts may be stated as follows: On May 25, 1950 plaintiff was a passenger on a P.T.C. bus eastbound on Chestnut Street in Philadelphia, and injured her right ankle in alighting at 23rd Street at about 5:30 p.m. At that time she was carrying an umbrella, coat and pocketbook and wearing very high, narrow French heels (about an inch in width and three inches high); with her shoes on she is five feet two inches tall. Plaintiff testified that she pushed and shoved her way through a crowded bus in order to alight. She stepped with her right foot from the bus's bottom step onto the culvert or sewer inlet grate on Chestnut Street and her heel caught in an opening between the bars of the grate and she fell to the ground. The bus had stopped with the steps right over the culvert and because the bus had been crowded with passengers, some of whom were standing on the vestibule steps, she did not see the cul-

vert before she stepped on it. It had been raining shortly before the accident. The right side of the bus was 2½ or 3 feet north of the south curb line of Chestnut Street. The bus driver testified that normally he stopped the bus within six inches of the curb. In this instance, he was prevented from approaching closer to the curb because a truck, coming out of an automobile agency driveway next to the corner, had traveled three feet into the street. The bus driver knew that the sewer inlet was located at this intersection and it could be seen through the front window when he approached the same. The sewer inlet is a regular city standard inlet with two drop grates, each 23 inches long and 20½ inches wide, separated by a center bar 1¾ inches wide. The bars on the grates were 1⅜ inches wide and 1½ inches apart. The grate elevation from the level to the crown or center is three-quarters of an inch. There was no evidence or claim that the grates were in any way defective. These inlets, like thousands of inlets of this type in the city, are constructed and maintained by the City of Philadelphia. Plaintiff testified that she was the last passenger to alight.

"The law is clear that a common carrier for hire owes a duty to its passengers not only to exercise the highest degree of care and diligence in carrying them to their destination, but also must exercise reasonable diligence to give passengers a safe place to alight and pass out of danger: . . . . In O'Malley v. Laurel Line Bus Co., supra, p. 255, the rule is clearly stated that '. . . If the person in charge of a car used for the carriage of passengers for hire, knowingly permits one of them to get off the vehicle at a dangerous place, which is not the usual stopping place, and the dangerous character of which the passenger could not see and did not know, the carrier will be liable for the resulting injuries, if any, to the passenger: . . . .'" *Stevens v. Read-*

*ing St. Railway Co.*, 384 Pa. 390, 394, 395, 121 A. 2d 128.

The real question in this case is whether the plaintiff was permitted to alight from the bus at an obvious ly dangerous place. In *MacDonald v. Phila. Rural Transit Co.*, 147 Pa. Superior Ct. 220, 225, 24 A. 2d 37, Judge RHODES, now President Judge, said: "There is no duty on the operators of such common carriages to anticipate every uneven surface or defect in the highway proper or along the side thereof, and stop so as to avoid any remote possibility of an alighting passenger's sustaining injury by slipping on an uneven surface or stepping in a depression not in itself an obviously dangerous place. What is a place of obvious danger is at times a question for the court, and at times, if from the facts various inferences are possible, for the jury. . . . [cases omitted] But it must be such at least that a reasonably prudent person would believe that it contained manifest characteristics of potential harm under the circumstances."

Much reliance was placed by the court below on the *Stevens* case. In that case the plaintiff, alighting from defendant's bus, stepped into a large hole approximately one and a half feet long, a foot wide and six inches deep, which was sufficiently dangerous to have caused the fall of another alighting passenger. In the present case, however, the ordinary sewer inlet grate, on which plaintiff caught her heel and fell, was admittedly nondefective and in good repair and whether wet or dry was not of such a character as might reasonably be foreseen as a hazard that would produce injury. There are thousands of such sewer inlet grates on the city streets and persons walk on them constantly, wearing all sorts of shoes and in all kinds of weather. A number of passengers preceded plaintiff from the bus and no passenger other than plaintiff fell on the sewer

grate. Even if the inlet should be called a "defect" in the street, it could be no more than one of those "ordinary defects" which were recognized in the *Stevens* case as not imposing liability on common carriers. Not only do two separate sewer inlets exist at the intersection involved in this case but it is common knowledge that numerous other sewer inlet grates on the city streets are usually at intersections and frequently in the foot crossings. Their existence has never been held to create a hazard to pedestrians. While it is true that pedestrians may avoid such inlets, there are numerous occasions when this is utterly impossible due to the crowded conditions which exist from time to time on city streets. We are of the opinion, under all the circumstances, that this was not such a dangerous condition as to cause a reasonably prudent person to believe that it contained potential harm. What was said in *Low v. Harrisburg Railways Co.*, 290 Pa. 365, 367, 138 A. 852, is peculiarly apposite here: "No defect in the manufacture, or in its condition at the time of the accident, which gave rise to the present suit, was established, nor was it shown that any one passing over the street crossing, which the grooved rail traversed, had ever suffered injury by reason of it, or that there was obvious danger in walking or driving across."

Judgment is reversed and here entered for the defendant.