## Theriot v. Philadelphia Transportation Co.

*I. Raymond Kremer*, for plaintiff.
*James D. McCrudden*, for defendant.

GRIFFITHS, J., February 28, 1963.—This matter comes before your honorable court on an appeal by defendant Philadelphia Transportation Company in a case where the jury brought in a verdict against it in the amount of $12,500. The gravamen of plaintiff's complaint is that she suffered injuries from a fall while alighting from one of defendant's motorbuses, which fall was caused by the negligence of the driver in stopping the bus in the immediate proximity of a fire hydrant. Within the time allowed by the rules of court, PTC joined the City of Philadelphia as an additional defendant, which in turn, also joined the property owners, Norman and Sara Newton, as additional defendants. Inasmuch as compulsory nonsuits were granted as to the City of Philadelphia and the Newtons respecting which no motions have been made, they are no longer in the case and no further references will be made concerning them.

On May 3, 1962, defendant filed motions for judgment non obstante veredicto upon the whole record and for a new trial. The motion for a new trial set forth four reasons: (1) The verdict was against the evidence; (2) the verdict was against the weight of the evidence; (3) the verdict was against the law, and (4) the verdict was excessive. Thereafter, on September 11, 1962, PTC filed additional reasons for a new trial, setting forth specific alleged errors in the trial of the case. On September 13, 1962, plaintiff filed a motion to strike these additional reasons. While the court deemed plaintiff's motion not to be without merit, it, nevertheless, in the interest of fairness, permitted the said additional reasons to remain as part of the record of the case.

PTC in its brief did not discuss the additional reasons for a new trial separately but grouped them under several headings. Therefore, we will discuss these groups rather than the individual exceptions.

Appellant first argued that plaintiff failed to prove it was negligent.

Plaintiff testified that she was born March 1, 1904, and that at the time of the accident she was a widow. She stated that on May 27, 1958, at about 4:10 p.m., she was returning from work at Zerrer and Bradley, Twelfth and Race Streets, Philadelphia. She boarded the route 42 westbound bus in question and paid her fare. At that time the sun was still shining, the weather clear and dry and the bus was crowded. Concerning the happening of the accident, she stated:

"When I went to get off at 54th and Spruce there was two or three people getting off. I still think it was two. When they went to get off I had approached to get off too, and when they got away from me there was— I saw this fire plug and I didn't know what to do. I didn't know whether to take a step or not. So everybody in the back was sort of pushing and the bus driver said 'Come on girls, we don't have all night', and I went to take a step down. Then I must have had to twist around the fire plug to leave, and that's all I remember. I must have passed out that's all I remember . . .

"Q. (By Mr. Kremer) Where was the fire plug with relation to the door of the bus?

"A. About a foot away, it was very close.

"Q. About a foot away you say?

"A. Yes.

"Q. Where was it with regard to the doors?

"A. The door was almost smack up against it. . . .

"Q. Did you try to avoid the fire plug?

"A. I twisted my leg to get around it. . . .

"Q. Was there anybody behind you at that time?

"A. Yes, my sister. . . .

"Q. What were her motions, if any. Could you feel anything?

"A. She was pushing up against me, helping me.

"Q. (By the court) Your sister was pushing up against you?

"A. Yes, because there were other people back of her."

Mrs. Estelle Isaacs of 536 South Fifty-second Street, a sister of plaintiff, after stating that she was on the same bus with plaintiff, testified she saw the accident, and that it happened in the manner described by plaintiff. In addition, she also testified that the bus driver was hurrying the passengers off.

Witnesses for the PTC gave a somewhat different version of the accident. These include one of its accident investigators who, upon arriving at the home of plaintiff and her sister shortly after the accident, reduced to writing the result of conversations he had with each of them and stated that, after having read them to the respective parties, had them sign them. These statements are to the effect plaintiff fell, not over the fire plug, but because of a small depression on the grass near the fire plug.

The facts surrounding these interviews as described by this witness, and as set forth by Mrs. Isaacs, are substantially different. For example, Mrs. Isaacs testified, inter alia, that the statements under consideration were not read to either plaintiff or herself. However, without further analyzing these and other differences in the testimony adduced, it is sufficient to note that the various versions of the facts surrounding plaintiff's fall were supported by competent evidence and the jury, thus faced with questions of fact, resolved them in favor of plaintiff.

In seeking to have the court enter a judgment n.o.v., the record must, generally speaking, be read in the light most favorable to the party opposing the motion. In Ucci v. Keane, 402 Pa. 467, 469 (1961), the court succinctly sets forth these requirements:

"In passing upon the motion for judgment non ob-

stante veredicto, the testimony must be viewed in the light most favorable to plaintiff, in whose favor the verdict was returned, resolving all conflicts therein in his favor, and giving him the benefit of every fact and inference of fact, pertaining to the issues involved, which can reasonably be deduced from the evidence.

"The light with which the testimony must be so viewed must emanate from the lamp of impartiality which, while focused on the scale of justice, shows a weight in the measurement of which natural sympathies can play no part. Ours is the function of determining whether, in a given case, a basis exists from which actionable negligence can be said to have arisen."

With this frame of reference required of us, we now examine the facts in light of the law on the question of defendant's negligence. In Kerr v. Philadelphia Transportation Company, 187 Pa. Superior Ct. 512, a plaintiff sister sued defendant carrier for injuries received while alighting from its buses. There, the Superior Court did enter judgment n.o.v. in favor of defendant on the facts which are readily distinguishable from those in the instant case; nevertheless, the court, in its opinion, clearly set forth the applicable law on page 514:

" 'The law is clear that a common carrier for hire owes a duty to its passengers not only to exercise the highest degree of care and diligence in carrying them to their destination, but also must exercise reasonable diligence to give passengers a safe place to alight and pass out of danger: . . . In O'Malley v. Laurel Line Bus Co., supra, p. 255, the rule is clearly stated that ". . . If the person in charge of a car used for the carriage of passengers for hire, knowingly permits one of them to get off the vehicle at a dangerous place, which is not the usual stopping place, and the dangerous character of which the passenger could not see and did not know, the carrier will be liable for the resulting in-

juries, if any, to the passenger . . ." ' ": Stevens v. Reading St. Railway Co., 384 Pa. 390, 394, 395, 121 A.2d 128.

"The real question in this case is whether the plaintiff was permitted to alight from the bus at an obviously dangerous place." (Italics supplied.)

In the instant case, as in Kerr v. PTC, supra, the ultimate question in the case is whether or not plaintiff was permitted to alight from the bus at an obviously dangerous place. The trial judge was aware of this, as is apparent from the following portion of his charge:

"The first question then, as I mentioned to you is to determine whether or not the operator of this PTC bus was negligent. Unless you find him negligent, there is no case that the plaintiff has, and your verdict then should be for the defendant.

"The common carrier, the Philadelphia Transportation Company, in transporting people, passengers, has the highest degree of care placed upon it to safely transport passengers.

"And as you get further into the question of exercise of this highest degree of care imposed on the PTC, the law is that if a person in charge of the bus used for carriage of passengers, this PTC bus, knowingly permits one of the passengers to get off the vehicle at a dangerous place, which is not the usual stopping place, and the dangerous character of which the passenger would not see and did not know, the carrier, the PTC in this case, known as the carrier, will be liable for the resulting injury if any are sustained by the passengers.

"Or, to state it another way, where a passenger is mistakenly led to alight at an extremely dangerous place, which is not the usual stopping place, the PTC may be held liable for any injuries which the passenger sustains.

"So that you should determine whether the operator of this bus knowingly permitted Mrs. Theriot to get off at a dangerous place. That is the vital question.

"Was this a dangerous place? It has also been stated, manifestly dangerous, in the language of the cases as expressed by the Supreme Court,—at a manifestly dangerous place. Or, as I told you, extremely dangerous place.

"So that where she got off, the operator must have known it to be manifestly dangerous to get off there, and nevertheless, he let her get off at that manifestly dangerous place.

"Now, if the operator knew that or should have known it, then he is not acting as a reasonably prudent person would have acted under the circumstances. He is not acting with the care, caution and diligence that a reasonably prudent person would have acted.

"But you must first find, if you are going to bring in a verdict for the plaintiff, that this operator knew or should have known that this place where he was permitting Mrs. Theriot to alight was a dangerous place.

"Also, getting into the question of contributory negligence, the possible contributory negligence of Mrs. Theriot, that this dangerous condition was not known to Mrs. Theriot, or that she could not have seen it herself;

"In other words, if the operator of a bus were to let you off at a dangerous place and you knew it was dangerous, you can't complain if you are hurt because you have been warned of the danger; unless certain other circumstances exist, which don't exist in this case.

"Or, if getting off at a dangerous place, you look and you see it or you should have seen it, you can't complain. A person getting off a bus can not close his eyes, so to speak, and step anywhere at all. He has to keep his eyes open, and if he sees a danger in front of him, he has to avoid it. Now, of course, I am not saying Mrs. Theriot closed her eyes but I am saying that she has to keep her

eyes vigilant upon where she is stepping and she has to observe where she is going.

"And, if she either knew of this existence of the fire plug or that she should have known it, or could have seen it,—let us put it this way: If she either knew it or could have seen, then she cannot recover."

In the case before us, the driver knowingly stopped where he knew passengers alighting would have to encircle a fire plug and, therefore, could not see the fire plug in time to avoid contact with it; and to get a safe landing, plaintiff followed others in alighting. Persons in back of her were pushing to get off under verbal complaints from the driver to hurry. In our opinion, the summation of the circumstances, all of which were put in motion and continued by appellant's driver, constitutes negligence.

In considering the facts of the case in the light of the law, as set forth above, we dismissed PTC's motion for judgment n.o.v.

Turning now to PTC's motion for a new trial, its original four reasons set forth on page 376, supra, go to the proposition that the verdict was contrary to the evidence in general. The exception possibly being the allegation that the verdict was excessive, but since this was not discussed in PTC's brief or argued, it will not specifically be dealt with here.

The basis for a court's granting or refusing to grant a new trial are set forth in Ason v. Leonhart, 402 Pa. 312, 315 (1960), in the following language:

"Appellant seeks alternatively a new trial because the verdict was against the weight of the evidence, the verdict was capricious and unjustifiable, and the Court committed trial errors. In considering whether a verdict is capricious or is against the weight of the evidence, the test is whether, considering all of the evidence, the lower Court committed a clear abuse of dis-

cretion: Ferruzza v. Pittsburgh, 394 Pa. 70, 145 A. 2d 706; Clewell v. Pummer, 388 Pa. 592, 131 A. 2d 375, (citing a dozen recent cases); Kiser v. Schlosser, 389 Pa. 131, 132 A. 2d 344. See also the 23 cases cited in the footnote in Sherman v. Manufacturers Light and Heat Company, 389 Pa. 61, 68, 132 A. 2d 255.

"In Kiser v. Schlosser, supra, the Court said (page 132) . . . 'the determination of whether a verdict is against the weight of the evidence, so that a new trial should be granted, rests primarily within the discretion of the trial court, and its action will not be disturbed unless there is a palpable abuse of that discretion as determined from a careful review of the entire record. . . .' "

In Gougher v. Hansler, 388 Pa. 160 (1957), the court, speaking of the significance of conflict in testimony, stated, on page 165:

"Credibility of witnesses is, of course, primarily for the jury's appraisal but when the trial court is satisfied that the verdict returned by the jury was based on testimony that was 'incredible,' (David v. Rider, supra) or 'wholly unbelievable' (Iacovino v. Caterino, 332 Pa. 566, 580, 2 A. 2d 828), it is the court's bounden duty to grant a new trial in order that the interests of justice may be properly served."

As above pointed out, plaintiff's version of the accident and that of defendant were different. However, in considering the facts neither of defendant's witnesses to the happening of the accident can properly be deemed disinterested in that both are in the employ of the PTC. Explanations by plaintiff and her witnesses of some of the alleged conflicts in their own testimony were not patently unreasonable, and we believe that the jury, in arriving at its verdict, based such verdict on testimony that was credible or wholly believable.

Finally, PTC's assignments of error, 5 through 10

and 12, in one way or another, are to the effect that the trial judge's charge was insufficient or in error as to the applicable law. It is not necessary that a trial judge adopt all the parties' requests for charge, so long as he includes all the essentials of law necessary for the decision of the case: Kurtz v. Philadelphia Transportation Co., 394 Pa. 324 (1959).

The charge as a whole covered the required principles of law, which, coupled with the fact that defendant did not take exceptions to the charge at the time, cannot be made the basis for arguing reversible error exists.

Defendant's assignment of error no. 13 relates to the effect of the trial judge's admission in evidence of an ordinance of Philadelphia requiring buses to come within six inches of a curb when discharging passengers. The trial judge charged there was no causal connection between this ordinance and the accident and, therefore, the mere introduction of the said ordinance in evidence does not constitute reversible error.

Finally, defendant's assignment of error no. 11 is to the effect that the court erred in not permitting the jury to take into the jury room defendant investigator's statements of the interview he had with the parties the day of the accident. Defendant does not seriously urge this argument upon us and concedes that the trial judge had discretion in withholding it from the jury, inasmuch as it was read to the jury and was, therefore, in evidence before the jury upon which they would deliberate.

Therefore, in light of the above, we also dismissed defendant's motion for a new trial.