474

Flank, Appellant, *v.* Philadelphia Transportation
Co. et al.

Argued March 20, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Frank Bielitsky,* for appellant.

*James D. McCrudden,* for transportation company, appellee.

*Walter R. Milbourne,* with him *Pepper, Hamilton & Scheetz,* for corporation, appellee.

OPINION BY WATKINS, J., June 11, 1964:

This is an appeal from the refusal of the County Court of Philadelphia to take off a compulsory nonsuit entered in favor of the defendants, Philadelphia Transportation Co., City of Philadelphia and 1319 Market St. Building, Inc., and against the plaintiff-appellant, Lillian Flank. The appellant does not press her appeal against the City of Philadelphia. The facts are as follows:

On December 24, 1958, at or about 9:00 o'clock a.m., the plaintiff, Lillian Flank, fell when alighting from a bus at a stop in front of the Market Street National

Bank building. She was in a stream of passengers and as stepping down from the bus "experienced a sensation of tripping over a board" and she lost her balance and fell. After falling she was assisted to the building, and at the time noticed a board lying on the pavement near the point where she had gotten off the bus. This board was variously described as being 2′ x 1′ x 1″ and 2′ square. She did not see the board on the sidewalk, apparently because of the people in front of her. There were two steps leading from the bus to the sidewalk and about eight passengers alighting in front of her and six in back of her.

During her cross-examination she stated, "I couldn't see the ground because these people were in front of me; I couldn't see anything in front of me." It wasn't until after the accident that plaintiff looked over and saw for the first time the fresh cement with a board over it.

It is admitted that all the other passengers alighted safely. A witness testified that he saw the plaintiff fall and when he walked up to her she was standing near a wooden plank which he described as being six inches from the curb, 1′ in width, 2′ long and 1″ thick over a piece of concrete two feet square. It was testified that as soon as her feet hit the pavement she fell down.

Another witness, a maintenance man, testified that he repaired a small depression on the sidewalk in front of the premises approximately six inches from the curb line, five or six inches square and one inch deep. He made the repairs with sacrete and he erected a barrier with four stanchions which were connected by boards nailed to all four corners so that the barrier could stand erect over the area repaired. The barrier, when erected, and this was done the day before the accident, would stand two or three feet high. He also testified that the material used in the construction of the bar-

rier were all 2″ x 4″ or 2″ x 2½″ lumber and that no plank 2′ square or 2′ x 1′ x 1″ was used.

The plaintiff has the burden of proving that at least one of the defendants, the transportation company or the property owner, was negligent and that the negligence was the proximate cause of the accident. She also had the burden of proving the existence of an unsafe defect in the sidewalk, which was the proximate cause of her injury and that the defendant had actual or constructive notice thereof.

The plaintiff-appellant has abandoned her appeal as to the City of Philadelphia. With respect to the defendant, Philadelphia Transportation Co., we agree with the court below that she had the burden of proving that she was discharged at a manifestly dangerous place. This she failed to do. The place of the accident was a regular and usual stopping place for the boarding and discharging of passengers and was not owned or controlled by the transportation company. The pavement in question was at the intersection of two busy streets in the City of Philadelphia. There was no evidence of the existence of an obviously dangerous condition on this sidewalk. Many persons preceding and following her safely alighted from the bus.

As President Judge RHODES said in *MacDonald v. Phila. R. T. Co.*, 147 Pa. Superior Ct. 220, 225, 24 A. 2d 37 (1942) : "There is no duty on the operators of such common carriages to anticipate every uneven surface or defect in the highway proper or along the side thereof, and stop so as to avoid any remote possibility of an alighting passenger's sustaining injury by slipping on an uneven surface or stepping in a depression not in itself an obviously dangerous place. What is a place of obvious danger is at times a question for the court, and at times, if from the facts various inferences are possible, for the jury. [citing cases]. But it must be such at least that a reasonably prudent person would

believe that it contained manifest characteristics of potential harm under the circumstances." This was cited with approval by this Court in *Kerr v. Phila. Transportation Co.*, 187 Pa. Superior Ct. 512, 515, 144 A. 2d 584 (1958). In the *Kerr* case the plaintiff was wearing high heels and the bus stopped about three feet from the nearest curb with the steps of the bus over a city sewer inlet and the plaintiff stepping into the grille fell when her heel caught in the opening. We held that the evidence was insufficient as a matter of law to establish that the carrier was negligent for stopping at a place of obvious danger.

In the instant case, the transportation company stopped its bus at the usual place alongside the pavement and plaintiff stepped from the bus directly to the pavement. There is no evidence that the company had any knowledge of the existence of the so-called depression or of any board on the pavement and from this record no inference is possible that this pavement was an obviously dangerous place.

In *Carroll v. Pittsburgh*, 368 Pa. 436, 84 A. 2d 505 (1951), the car stopped at its regular stopping place at the intersection of two city streets, where large numbers of passengers were continually boarding and alighting from the cars and the plaintiff was denied recovery for the injury resulting from stepping into a hole in the street which she was prevented from seeing because of people in front of her. The Supreme Court said at page 441: ". . . 'a street railway company cannot be held to as strict accountability in furnishing a place for a passenger to alight as a railroad company. The former must discharge its passengers in the public highway and at places over which it does not have exclusive control; and hence its liability is different from that of a railroad company which has the exclusive control over its stational facilities.' " And further at page 441: " '. . . Street car companies are not required

to observe the condition of streets over which its cars travel so as to stop their cars with exactness at places where passengers may avoid ordinary defects in the highway while alighting. To require otherwise would be to exact of such carriers a degree of care not consistent with efficient public service and would impose an obligation impossible of performance, considering the condition of some of the highways of today . . . To hold, under such circumstances, that the duty of stopping at a safe place to alight embraced the obligation to avoid any defect in the highway, between the car and the curb, would cause the company to be liable as an insurer for the safety of a pedestrian in coming from or going to a car . . .' ".

As to the liability of the owner of the building it is clear that the company had notice of the depression in the pavement and the record shows that it was filled with cement and a barrier erected over it. A detailed description of the lumber used in the construction of the barrier disclose that no plank 2' square or 2' x 1' x 1" as described by the plaintiff and her witness was used by the agent of the building company. The agent testified that the barrier was so constructed as to stand two or three feet over the newly laid cement.

If the testimony of the plaintiff and her witness is sufficient to show that the plaintiff tripped over the described board, there was no evidence to show how this board got to the sidewalk and how long it was there. Clark, the agent of the building company, called as the plaintiff's witness, described all of the lumber used to repair the depression and the barrier. He had no knowledge concerning the plank described by the plaintiff and if, in fact it existed, could have gotten there after his job was done and we have no knowledge from this testimony what in fact happened to the barrier constructed.

There is no evidence as to how long the plank was on the sidewalk or whether either notice or constructive notice was brought home to the building company. It is quite consistent with the facts that the barrier could have been built on Sunday and, as sacrete was used, which is a quick drying cement composition, removed on Monday.

The defendant building company argues that it was carrying out its duty as a conscientious landlord and owner by the construction of the barrier over the repaired depression. The Pennsylvania law imposes upon the possessor of land the duty to exercise reasonable care to maintain in a safe condition for travel the sidewalk of an abutting public highway. See: Pa. Annotations to the Restatement of the Law, Torts, Topic 7, page 202, §§349, 377, 378, 379. The Pennsylvania rule is contrary to §349, Restatement of the Law, Torts, page 956.

The argument of the plaintiff that it was negligence to construct a barrier over the repaired hole near the curb where passengers usually board and alight from buses is without merit. The testimony shows that the barrier was constructed on Sunday. There is no evidence as to when and who took it down nor is there any evidence that if it was negligently constructed that it had any connection, causal or otherwise, with plaintiff's falling or tripping. As the court below said:

"In the instant case the only evidence as to whether plaintiff tripped over a board was her statement that she had a sensation of tripping over a board. True, plaintiff, and one of her witnesses, saw a board on the sidewalk after her falling, but there is no evidence, or even a fair or just inference that this board had any connection with the accident. Also, it is clear, this board the witness presumed struck plaintiff was not put there by any of the defendants. Moreover, as-

suming (for discussion purposes only) that this board was negligently left on the sidewalk, the record does not disclose any notice, actual or constructive, to attach a liability on the defendants.

"The jury should not be permitted to speculate that the board plaintiff 'had a sensation of tripping over' was left there through the carelessness or negligence of an employee of the defendants, or to speculate whether the plaintiff did actually trip over the board. A jury is not permitted to speculate or guess. The burden of proof in a case of this sort cannot be proved by presumptions or conjectures.

"If the jury were permitted to say that the board was left or put on the sidewalk through a source other than an employee of the defendants, there is nothing in the evidence to prove how long it remained on the sidewalk prior to the accident so as to have given the defendants actual or sufficient constructive notice to impute liability thereon." See: *Hess v. Sun Ray Drug Co.*, 387 Pa. 199, 127 A. 2d 699 (1956).

Decision affirmed.